Richard L. WHITLEY, Appellant,

v.

Toni V. BAIR, Warden, Mecklenburg Correctional Center, Appellee.

No. 85–4005.

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1986.

Decided Oct. 6, 1986.

Timothy M. Kaine (Little, Parsley & Cluverius, on brief) and Thomas M. Wolf (Mezzullo, McCandlish & Framme, Richmond, Va., on brief) for appellant.

Richard B. Smith, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen. of Va., Richmond, Va., on brief), for appellee.

Before WINTER, Chief Judge, and WIDENER and SPROUSE, Circuit Judges.*

* Due to the plethora of claims that Whitley raised in the various proceedings here involved, our rulings with regard to the procedural default issue raised in this appeal are necessarily complicated. Consequently, for easier reading, the reader is advised first to

WIDENER, Circuit Judge:

Richard Lee Whitley, under sentence of death for the murder of Phoebe Parsons on July 25, 1980, appeals from the dismissal of his petition for a writ of habeas corpus by the United States District Court for the Eastern District of Virginia. We find no merit in Whitley's contentions, and we affirm.

In its opinion denying Whitley's direct appeal, the Virginia Supreme Court fully summarized the facts, as they were proved at trial, concerning the brutal murder with which Whitley was charged and convicted. See *Whitley v. Commonwealth,* 223 Va. 66, 70–71, 286 S.E.2d 162, 164–65 (1982). Consequently, we need not recount those facts in great detail here. Suffice it to say that Whitley brutally attacked his neighbor, Phoebe Parsons, age 63, in her home in Fairfax County, Virginia. He first strangled Mrs. Parsons with his hands, and then with a rope; he next cut her throat with his pocket knife; and then, while the victim was near death, or immediately thereafter, Whitley sexually abused her with two umbrellas. The evidence also showed that Whitley on that occasion robbed Mrs. Parsons of various items.

In a bifurcated trial in the Circuit Court of Fairfax County, a jury convicted Whitley of capital murder in the commission of a robbery, while armed with a deadly weapon. See VA.CODE § 18.2–31(d) (1982). The jury fixed Whitley's punishment at death. The Virginia Supreme Court affirmed both the conviction and the sentence in *Whitley v. Commonwealth,* 223 Va. 66, 286 S.E.2d 162 (1982).[1] The Supreme Court subsequently denied Whitley's petition for

read footnote 17, in which we set forth our rulings with regard to that issue item by item.

1. Whitley raised the following claims in his appeal to the Virginia Supreme Court:

1. That the trial court erred in denying Whitley's motion to strike the evidence at the close of the Commonwealth's case-in-chief;

2. That the evidence, viewed in totality, was insufficient to support the jury's finding that an intent to steal preceded the murder;

3. That the Commonwealth failed to prove beyond a reasonable doubt that the killing was premeditated;

4. That the trial court's denial of Whitley's motion to strike the capital murder count was arbitrary and capricious;

5. That the trial court erred in permitting the Commonwealth to introduce and comment on a photograph of the victim;

6. That the Commonwealth's Attorney made improper and prejudicial closing remarks to the jury during the guilt phase of Whitley's trial;

7. That the Commonwealth's attempted introduction into evidence of Whitley's alleged misconduct with his stepdaughter deprived him of his state and federal rights to a fair trial and due process of law;

8. That the Virginia capital murder statute is unconstitutional on its face, denies Whitley due process of law and a fair trial, and subjects him to cruel and unusual punishment;

9. That the Virginia capital murder statute is unconstitutional as applied to Whitley, denies him due process of law, and subjects him to cruel and unusual punishment;

10. That the trial judge erred in affirming Whitley's death sentence;

11. That the jury imposed the death sentence under the influence of passion, prejudice, and other arbitrary factors;

12. That the death sentence in Whitley's case was excessive and disproportionate to the penalties imposed in other, similar cases; and,

13. That the jury was not instructed that the term "aggravated battery," as used in the Virginia capital murder statute, is a battery which, qualitatively and quantitatively, is more culpable than the minimum necessary to accomplish an act of murder. (Whitley raised this issue for the first time in his reply brief).

The Virginia Supreme Court disposed of each of these claims on their merits, except for Whitley's claim that the Commonwealth's Attorney made improper and prejudicial closing remarks to the jury during the guilt phase of Whitley's trial and his claim that the jury was not completely instructed on the definition of aggravated battery. See *Whitley v. Commonwealth,* 223 Va. at 72–82, 286 S.E.2d 162. Although the Virginia Supreme Court noted its inclination to rule against Whitley on the merits of his prejudicial closing remarks claim, the court concluded that due to Whitley's failure to object to the allegedly prejudicial remarks at the time they occurred, Virginia's contemporaneous objection rule precluded a ruling on the merits on that issue. *Id.* at 76, 286 S.E.2d 162. With regard to Whitley's claim concerning the aggravated battery instruction, the court held that it would not notice a non-jurisdictional question raised for the first time in

a writ of certiorari. *Whitley v. Virginia,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982).

a reply brief filed in that court. *Id.* at 79´n. 2, 286 S.E.2d 162 (citing VA.S.CT.R. 5:21).

2. Whitley's petition for state habeas corpus incorporated many of the claims that he had previously raised in his direct appeal to the Virginia Supreme Court, including the following:

1. That the Virginia capital murder statute is unconstitutional on its face;

2. That the Virginia capital murder statute is unconstitutional as applied to Whitley;

3. That the trial court committed prejudicial error that deprived Whitley of due process of law by permitting the introduction of and comment upon a photograph of the victim;

4. That the Commonwealth's attempted introduction of evidence concerning Whitley's alleged sexual improprieties with his stepdaughter deprived Whitley of due process of law;

5. That the Commonwealth's Attorney made improper and prejudicial remarks to the jury during closing argument in the guilt phase of Whitley's trial;

6. That the trial court arbitrarily and capriciously denied Whitley's motion to strike the evidence by prejudging the merits of the motion;

7. That the trial court committed prejudicial error in denying Whitley's motion to strike the evidence;

8. That the trial court erred in submitting the case to the jury on the issue of capital murder because there was insufficient evidence to indicate that the killing was premeditated; and,

9. That the trial court erred in submitting the case to the jury on the issue of capital murder because there was insufficient evidence to indicate that Whitley formed an intent to steal prior to the murder.

Whitley also included in his state habeas corpus petition numerous claims that he had not previously raised either at trial or on direct appeal, including the following:

10. That Whitley was denied the assistance of counsel without a valid waiver of same both when he was custodially interrogated in Florida and Virginia and when he waived his right to an extradition hearing from Florida to Virginia;

11. That Whitley was not afforded reasonably effective representation by his trial counsel at the guilt phase of his trial;

12. That Whitley was not afforded reasonably effective representation by his trial counsel at the sentencing phase of Whitley's trial;

13. That the trial court committed prejudicial error, thereby depriving Whitley of due process of law, by permitting several ju-

On May 27, 1983, Whitley filed a petition for a writ of habeas corpus in the Circuit Court of Fairfax County.[2] The circuit

rors to serve despite their alleged bias against Whitley or for the Commonwealth;

14. That the trial court committed prejudicial error, thereby depriving Whitley of due process of law, by prematurely excluding for cause several jurors who gave equivocal answers concerning their readiness to impose the death penalty;

15. That the trial court committed prejudicial error, thereby depriving Whitley of due process of law, by admitting into evidence in the guilt phase of Whitley's trial Whitley's allegedly involuntary custodial statements;

16. That the trial court committed prejudicial error, thereby depriving Whitley of due process of law, by permitting the Commonwealth in the guilt phase of Whitley's trial to reopen its direct examination of Officer Jackson without first seeking leave of the court;

17. That the trial court committed prejudicial error, thereby depriving Whitley of due process of law, by permitting the Commonwealth in the guilt phase of Whitley's trial to exceed the scope of cross-examination of Investigator Sutherland;

18. That the trial court committed prejudicial error, thereby depriving Whitley of due process of law, by permitting the introduction of Whitley's allegedly involuntary custodial statements during the sentencing phase of Whitley's trial;

19. That the Commonwealth's Attorney made improper and prejudicial remarks during the sentencing phase of Whitley's trial;

20. That the trial court erred in submitting the case to the jury on the issue of capital murder, thereby depriving Whitley of due process of law, because there was insufficient evidence to indicate that Whitley acted with malice in killing Mrs. Parsons;

21. That the trial court deprived Whitley of due process of law by failing to instruct the jury during the guilt phase of Whitley's trial that in order to find Whitley guilty of murder in the course of a robbery, they would have to find that Whitley formed the intent to steal prior to the killing;

22. That the trial court deprived Whitley of due process of law by failing to instruct the jury at the guilt phase of Whitley's trial that the Commonwealth had to prove Whitley's guilt of murder during the commission of a robbery, to the exclusion of every reasonable hypothesis inconsistent with guilt, beyond a reasonable doubt on every element of the offense charged;

23. That the trial court deprived Whitley of due process of law by instructing the jury on the issue of "capital murder" at the guilt phase of Whitley's trial, without fur-

court dismissed the majority of Whitley's claims due to his failure to raise them at trial or on direct appeal.[3] On August 27, 1984, following an evidentiary hearing on certain of the issues,[4] the circuit court dismissed in its entirety Whitley's petition for a writ of habeas corpus.

ther explanation that the jury was not to pass judgment on the issue of punishment;

24. That the trial court deprived Whitley of due process of law by failing to instruct the jury during the guilt phase of Whitley's trial that the term "aggravated battery" as used in the Virginia capital murder statute means severe physical abuse of the victim before death;

25. That the trial court deprived Whitley of due process of law by failing to instruct the jury during the guilt phase of Whitley's trial that the term "aggravated battery" as used in the Virginia capital murder statute is a "battery" which, qualitatively and quantitatively, is more culpable than the minimum necessary to accomplish the act of murder (Whitley raised this issue in his reply brief on direct appeal and the Virginia Supreme Court refused to consider it);

26. That the trial court deprived Whitley of due process of law by sustaining the Commonwealth's objection to Whitley's proposed instruction on grand larceny as a lesser included offense of capital murder during the commission of a robbery (Whitley raised this claim at trial, but not on direct appeal);

27. That the trial court deprived Whitley of due process of law by erroneously instructing the jury during the guilt phase of Whitley's trial as to the malice component of the Virginia capital murder statute;

28. That the trial court deprived Whitley of due process of law by failing to instruct the jury during the sentencing phase of Whitley's trial concerning the torture component of the Virginia capital murder statute;

29. That the trial court deprived Whitley of due process of law by failing to instruct the jury during the sentencing phase of Whitley's trial on the factors that it should consider as circumstances in mitigation of the death penalty;

30. That the trial court deprived Whitley of due process of law by failing to instruct the jury during the sentencing phase of Whitley's trial that they could sentence Whitley to life imprisonment rather than death for any reason or for no reason;

31. That the trial court deprived Whitley of due process of law by failing to instruct the jury during the sentencing phase of Whitley's trial that they could find the battery to be aggravated for purposes of the Virginia capital murder statute only if they found that the victim was still alive when the alleged battery occurred;

32. That the trial court deprived Whitley of due process of law by permitting the state psychologist to testify during the sentenc-ing phase of Whitley's trial despite the fact that the psychologist's testimony was based in large part on Whitley's own statements;

33. That the trial court deprived Whitley of due process of law by permitting the Commonwealth's Attorney to exceed the scope of direct examination during his cross-examination of the state psychologist during the sentencing phase of Whitley's trial;

34. That the trial court deprived Whitley of due process of law by failing to determine adequately Whitley's competency, legal capacity, or mental abnormality;

35. That the trial court deprived Whitley of due process of law by failing to provide Whitley with state-paid expert witnesses, an investigator to aid in the preparation of trial, or a mental examination on the question of Whitley's sexual psychopathy;

36. That the trial court deprived Whitley of his constitutional rights by subjecting Whitley to an involuntary mental competency examination and permitting use of the results of that examination against Whitley during the sentencing phase of Whitley's trial; and,

37. That execution by electrocution is cruel and unusual punishment.

For a discussion of the circuit court's disposition of these claims, see note 3, *infra.*

For purposes of clarity, this opinion will refer to Whitley's claims by the numbers assigned to them in this footnote.

3. Of the thirty-seven claims that Whitley raised in his state habeas corpus petition, the circuit court considered only eight on their merits. Those claims that the circuit court considered on their merits included claims 1, 2, 3, 6, 7, 11, 12 & 37. See note 2, *supra.* The circuit court considered the rest of Whitley's claims to be barred under the Virginia procedural default doctrine set forth in *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975).

4. The circuit court granted an evidentiary hearing on four of Whitley's allegations relating to Whitley's claim that he did not receive reasonably effective assistance of counsel. These four allegations included the claims that Whitley's trial counsel: (1) failed to interview Whitley adequately; (2) failed to make an independent investigation into mitigating factors and psychiatric evidence during the sentencing phase of Whitley's trial; (3) failed to investigate and pursue mitigating evidence for the sentencing phase of Whitley's trial; and, (4) was ineffective at Whitley's sentencing hearing.

On appeal from this dismissal of his state habeas corpus petition, Whitley raised only two issues in the Virginia Supreme Court; (1) whether the circuit court erred in dismissing Whitley's claim that his trial counsel had failed to conduct adequate voir dire of the jury; and, (2) whether the circuit court erred in finding that Whitley's trial counsel was not ineffective during the sentencing phase of Whitley's trial in failing to investigate and present available evidence in mitigation of the death penalty.[5] On April 16, 1985, the Virginia Supreme Court, in a brief opinion, refused Whitley's petition for appeal, finding that the circuit court had committed no reversible error. See *Whitley v. Bass*, No. 84–1767 (Va. Apr. 16, 1985) (citing *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (U.S. Jan. 21, 1985), and *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066–67, 80 L.Ed. 674 (1984)); see also note 24 *infra*. The U.S. Supreme Court subsequently denied Whitley's petition for a writ of certiorari on November 12, 1985. *Whitley v. Bair*, — U.S. —, 106 S.Ct. 398, 88 L.Ed.2d 350 (1985).

On November 27, 1985, Whitley filed a petition for a writ of habeas corpus in the U.S. District Court for the Eastern District of Virginia. In this petition, Whitley reraised nineteen of the claims that he had previously raised in his state habeas corpus petition.[6] The district court concluded that the majority of Whitley's claims were not cognizable in federal court because Whitley had procedurally defaulted on the claims either at the trial level, on direct appeal, or in his state habeas corpus action. The district court held, therefore, that under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), Whitley's procedural defaults in the state proceedings were a procedural bar to consideration, in the subsequent federal habeas corpus proceeding, of those claims on which he had defaulted.[7]

The district court considered five of Whitley's claims on the merits, primary among them being Whitley's claim that his court-appointed trial counsel violated Whitley's right to reasonably effective assistance of counsel by failing adequately to investigate, prepare, present, and argue evidence at the sentencing phase of Whitley's trial.[8] On this claim, the district court, on the same record as was in the state circuit court and without another evidentiary hearing, did not accept the state court finding and ruled that Whitley's trial attorney's performance during the sentencing phase of Whitley's trial was outside the range of competence required of attorneys in capital cases. Nevertheless, applying the two-part test that the Supreme Court enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the district court held that his attorneys' errors in the case were not sufficiently prejudicial to Whitley's defense to warrant granting

---

5. The circuit court had disposed of each of these claims on their merits.

6. The claims that Whitley raised in his federal habeas corpus petition included claims 1, 2, 3, 5, 10, 11, 12, 14, 15, 18, 24, 25, 27, 28, 29, 30, 31, 32 & 35 from Whitley's state habeas corpus petition. See note 2, *supra*.

7. The district court considered Whitley to have defaulted on fourteen of his nineteen claims. Those claims on which the district court considered Whitley to have defaulted included claims 5, 10, 14, 15, 18, 24, 25, 27–32 & 35 from Whitley's state habeas corpus petition. See note 2, *supra*. The district court also considered Whitley to have procedurally defaulted, in part, on claim 11 from his state habeas petition.

8. The other four claims that the district court considered on the merits included claims that: (1) Whitley's trial counsel failed to conduct adequate voir dire with regard to certain jurors' hesitancy to apply the death penalty (claim 11); (2) the trial court erred in permitting the introduction of photographs showing the physical abuse of the victim (claim 3); (3) Virginia's capital murder statute is unconstitutional on its face (claim 1); and, (4) Virginia's capital murder statute is unconstitutional as applied to Whitley because there was insufficient evidence to establish that Mrs. Parsons was the victim of an "aggravated battery," or that Whitley had an intent to steal when he killed Mrs. Parsons (claim 2).

him relief on this claim.[9] With regard to Whitley's remaining four claims,[10] the district court rejected each on their merits and dismissed Whitley's habeas corpus petition. Upon dismissing Whitley's habeas corpus petition, the district court denied his application for a stay of execution and refused to grant him a certificate of probable cause to appeal.[11]

On December 12, 1985, this court considered Whitley's application for a certificate of probable cause to appeal and for a stay of execution, both of which were granted.[12]

In his appeal from the district court's dismissal of his habeas corpus petition, Whitley raises two principal issues: whether Whitley's trial counsel failed to provide Whitley with constitutionally effective legal representation at the sentencing phase of Whitley's trial, and whether the district court properly ruled that substantive claims that Whitley had not appealed to the Virginia Supreme Court, either on direct appeal or in his state habeas corpus appeal, were not cognizable in a federal habeas corpus action under the doctrine set forth in *Wainwright v. Sykes*.[13] Initially, we consider Whitley's allegation that his trial counsel ineffectively represented Whitley at the sentencing phase of Whitley's trial.

## I.

Whitley's primary contention is that the district court erred when it concluded that Whitley's court-appointed counsel provided Whitley with constitutionally effective representation during the sentencing phase of Whitley's trial. Specifically, Whitley contends that his trial counsel failed adequately to investigate possible mitigating circumstances to present to the jury during the sentencing phase of Whitley's trial. As a result, Whitley contends that he had no defense in this crucial phase of his trial.

During Whitley's state habeas corpus proceeding, the circuit court held an evidentiary hearing on certain issues relating to Whitley's representation during the sentencing phase of his trial.[14] At that hearing, Whitley presented evidence of mitigating circumstances that he claimed his trial counsel could have discovered and presented during the sentencing phase of Whitley's trial had counsel investigated Whitley's case adequately. This evidence included information that Whitley's trial counsel could have presented to the sentencing jury through the testimony of Whitley's employer, Gary Monahan, as to Whitley's alcohol consumption in the days preceding the murder, the testimony of Patricia Soberg, Whitley's sister, as to the tragic circumstances of Whitley's childhood, and psychiatric and like evidence of Whitley's organic brain dysfunction and his antisocial personality disorder. Because his trial counsel was unaware of this potentially mitigating information, Whitley contends that they were unable to prepare or present an effective defense during the sentencing phase of Whitley's trial. Thus,

9. As noted by the district court, under the second prong of the test set forth in *Strickland*, to establish constitutionally defective performance by counsel, Whitley would have had to have shown that there was a "reasonable probability that, absent the errors [in counsel's performance], the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland v. Washington*, 466 U.S. at 668, 695, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674.

10. See note 8, *supra.*

11. Whitley's scheduled execution date was December 16, 1985.

12. This court stayed Whitley's execution during the pendency of this appeal, or until the further order of this court.

13. Whitley also raises a third issue in his brief, namely, whether the rationale of *Wainwright v. Sykes* extends to compel procedural default of claims that a state habeas trial court considered on the merits, but which the petitioner did not appeal to the state supreme court. As Whitley implicitly recognizes in his brief, this issue is subsumed in the question whether the district court properly considered the majority of Whitley's claims to be barred from consideration in a federal habeas corpus action due to Whitley's procedural defaults in state proceedings.

14. See note 4, *supra.*

Whitley concludes, the district court erred in holding that, despite the unreasonability of trial counsel's performance, there was no resulting prejudice to Whitley, and, therefore, that Whitley's representation during sentencing was not constitutionally ineffective.

■ As noted above, the Supreme Court has established a two-part test for determining whether an attorney's performance during trial was so ineffective as to deprive a criminal defendant of his sixth amendment right to counsel. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first part of the test requires a defendant to show that his counsel was deficient by identifying the counsel's acts or omissions that the defendant alleges were not the result of reasonable professional judgment. *Id.* at 690, 104 S.Ct. at 2066. Indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, the district court must then determine whether, in light of all the circumstances, as viewed as of the time of counsel's conduct and not through hindsight, the defendant has carried his burden of showing that his counsel's acts or omissions fell outside the range of reasonably competent assistance. *Id.;* see also *Darden v. Wainwright,* — U.S. —, —, 106 S.Ct. 2464, 2473–75, 91 L.Ed.2d 144 (1986).

■ If counsel's performance was outside the range of competence demanded of attorneys in criminal cases, the defendant must then establish that any deficiencies in counsel's performance were actually prejudicial to the defense. See *Strickland v. Washington*, 466 U.S. 668, at 691, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674: "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Such a showing requires the defendant to establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct.

at 2068. Thus, if a defendant challenges a death sentence such as the one at issue in this case, the defendant must show that there is a reasonable probability that absent counsel's errors, the sentencer, including an appellate court to the extent it may weigh evidence, would have concluded that the balance of aggravating and mitigating circumstances did not warrant the imposition of a death sentence. *Id.* at 695, 104 S.Ct. at 2068–69.

In this case, the district court found that Whitley had met the first part of the test set forth in *Strickland*. More specifically, the district court found that defense counsel's failure to investigate potentially mitigating circumstances in Whitley's background, including Whitley's psychiatric history and his traumatic childhood, constituted performance outside the wide range of acceptable conduct for counsel in criminal cases.

Although the district court did find Whitley's trial counsel's performance to be unreasonably deficient, it also found that such deficiency did not actually prejudice Whitley's defense. Weighing each piece of additional mitigating evidence that Whitley proffered against the potentially negative evidence accompanying it, the district court found that the cumulative effect of this evidence was simply to add to the weight of aggravating circumstances, thereby tipping "the scales more drastically in favor of the sentence of death."

On appeal, Whitley contends that the district court erred in concluding that his attorneys' deficiencies at trial did not prejudice his defense, arguing that competent defense counsel could have minimized the negative aspects of the testimony of those witnesses who could have been called in mitigation but whom Whitley's trial counsel failed to present during the sentencing phase of Whitley's trial. The Commonwealth, on the other hand, contends that the district court erred in concluding that Whitley's trial counsel were constitutionally deficient in their representation of Whitley during the sentencing phase of his trial, arguing that the district court's finding of

no prejudice rendered a finding on the performance component of the *Strickland* test superfluous.

■ We agree with the Commonwealth. Consequently, we affirm the district court's finding that there was no prejudice to Whitley's defense as a result of his attorneys' allegedly deficient performance during the sentencing phase of Whitley's trial. Although we are by no means convinced that Whitley's attorneys' performance during sentencing was outside the wide range of competence expected of counsel in criminal cases,[15] as a result of our affirming the holding of the district court that there was no prejudice to Whitley's defense, we do not decide that issue. *Strickland v. Washington*, 466 U.S. 668, at 697, 104 S.Ct. 2052, 2069–70, 80 L.Ed.2d 674, plainly states that a court need not determine whether counsel's performance was deficient before examining prejudice that defendant allegedly suffered as a result of alleged deficiencies, and, if it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, a court should follow that course.

With respect to the evidence of Whitley's troubled family history that his trial counsel allegedly failed to develop or present adequately, a review of the record indicates that Whitley's sister, Patricia Soberg, was willing to testify on Whitley's behalf as to the abuse and neglect that he suffered as a child. This testimony would have indicated, among other things, that Whitley's father had abandoned the family while Whitley was an infant, that Whitley's mother drank heavily, that she beat her children with a belt, sometimes knotted with a buckle, that she left Whitley in the care of his sister from the time he was a small child, that Whitley left school at age 15, that Whitley's family was mired in poverty, that Whitley had injured his head in a train accident while a child, and that Whitley's older brother frequently beat Whitley and exercised an undue criminal influence on him during his adolescence.

Admittedly, such testimony could have had a mitigating effect on Whitley's sentencing jury. In addition to this potentially mitigating information about Whitley's background, however, Mrs. Soberg's testimony also included information that was very damaging to Whitley's defense at sentencing. For example, Mrs. Soberg's testimony would have disclosed information relating to Whitley's extensive criminal background of which Whitley's trial counsel had scrupulously and successfully kept the jury unaware throughout the course of the entire trial. Mrs. Soberg's testimony also would have included information about Whitley's prior abuse of elderly women, as well as information as to Whitley's alleged rape of his own mother.

Whitley now contends that although there were negative aspects to the testimony that Mrs. Soberg could have presented during the sentencing phase of Whitley's

---

15. See *Darden v. Wainwright*, —— U.S. ——, ——, 106 S.Ct. 2464, 2474–75, 91 L.Ed.2d 144 (1986) (rejecting habeas corpus petitioner's contention that his counsel failed to delve sufficiently into petitioner's background and as a result were unprepared to present mitigating evidence at petitioner's sentencing hearing); *Ballou v. Booker*, 777 F.2d 910 (4th Cir.1985) (counsel's failure to investigate victim's credibility in rape case not ineffective assistance in light of strength of evidence against defendant, including evidence from defendant's own admissions); *Burger v. Kemp*, 753 F.2d 930 (11th Cir.1985) (holding that counsel's decision not to investigate mitigating evidence further than he did was not unreasonable in light of overwhelming nature of gruesome evidence against defendant and possibility of negative evidence from defendant's mitigating witnesses), *vacated* and *remanded on other grounds*, —— U.S. ——, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985).

Our doubt as to whether Whitley's trial counsel's performance was unreasonable during the sentencing phase of Whitley's trial is reinforced by the fact that counsel's failure to contact Mrs. Soberg as a potential mitigating witness was a result, in large part, of Whitley's own statement to counsel that such contact would be fruitless because, to quote counsel, "she hated his guts." See *Tucker v. Kemp*, 776 F.2d 1487 (11th Cir.1985) (counsel not ineffective for failing to present mitigating evidence of petitioner's turbulent family history during sentencing in view of petitioner's failure to provide counsel with names of mitigating witnesses).

trial, had trial counsel called her to testify, this court should not consider those negative aspects because they were predicated on hearsay and thus inadmissible. We do not conclude that the negative aspects of Mrs. Soberg's testimony absolutely would have been admitted during the sentencing phase of Whitley's trial. We do concur with the district court, however, that there was a strong possibility that the negative aspects of Mrs. Soberg's testimony would have been admissible (some of them certainly were), and that, if admitted, the negative aspects of her testimony would have far outweighed the mitigating effect on the jury that her testimony might have had.

Whitley also contends that certain psychiatric and like testimony presented during his state habeas corpus proceeding would have been persuasive to the jury in mitigation of his sentence if his trial counsel had presented it during the sentencing phase of Whitley's trial. Dr. John D. Follansbee, a psychiatrist, and Dr. T. Richard Saunders, a clinical psychologist, testified on Whitley's behalf during Whitley's state habeas corpus proceeding. Dr. Saunders testified that he had found evidence that Whitley had an organic brain dysfunction that impaired Whitley's ability to reason and make judgments. Dr. Follansbee testified that Whitley had an antisocial personality disorder and that this disorder, when combined with Whitley's organic brain dysfunction, accentuated Whitley's inability to control his extreme impulses.

Once again, the mitigating aspects of this evidence are markedly outweighed by the negative information that would have accompanied it. Thus, although Dr. Saunders testified as to Whitley's mild organic brain dysfunction during Whitley's state habeas corpus proceeding, in statements that he made prior to this testimony, Dr. Saunders made repeated references to Whitley's sadistic behavior patterns. For example, as the district court noted, in a report dated April 18, 1984, Dr. Saunders stated that, "[s]adistic treatment of other people and dealing with other people in ways which inspire anxiety or guilt are quite common to [Whitley];" that Whitley "seems to approach others in an extraordinarily aggressive, uncontrolled affective state that is exceptionally vicious and hostile;" and that Whitley exhibits "a pattern of fear-induction and anxiety induction in other people, both showing a willingness to respond aggressively and actually doing so when it suits his purpose." Dr. Saunders also mentioned in his report Whitley's extensive criminal history, including Whitley's recent conviction for raping a male hitchhiker, as well as Whitley's alleged rape of his mother, and his alleged sexual misconduct with his eleven-year-old stepdaughter. We find that this negative testimony from Dr. Saunders would have far outweighed any positive benefit that Whitley would have obtained in mitigation of his sentence had the jury been informed of Whitley's organic brain dysfunction.[16]

We further conclude that Dr. Follansbee's testimony would have been similarly ineffective in mitigation of Whitley's sentence. Thus, although Dr. Follansbee discussed in his testimony the effect of Whitley's organic brain dysfunction on Whitley's ability to control his extreme impulses, he also made numerous negative comments about Whitley's personality and background that would inevitably have come out during the Commonwealth's cross-examination had Whitley's trial counsel put Dr. Follansbee on the stand during the sentencing phase of Whitley's trial. In a report submitted into evidence in the state habeas corpus proceeding, Dr. Follansbee noted many of the same negative incidents to which Dr. Saunders had alluded in his report of April 18, 1984, and also included a reference to an incident in prison in which Whitley had brutally beaten another inmate and had ended the assault by

---

16. Dr. Gwaltney, the state psychologist who examined Whitley prior to trial, testified during Whitley's state habeas corpus proceeding that the fact that Whitley was suffering from a mild organic brain dysfunction would not have changed his conclusion that Whitley was not mentally disabled at the time of the crime. Dr. Gwaltney went so far as to state that "each of us have an organic dysfunctioning brain."

wedging a broom stick in the inmate's rectum. We agree with the district court that these negative aspects of Dr. Follansbee's testimony outweigh the mitigating effect that his testimony might have had.

In his argument on appeal, Whitley relies principally on a recent unpublished opinion of this court and on a decision from the U.S. Court of Appeals for the Eighth Circuit, which cases held that a habeas corpus petitioner had been denied effective assistance of counsel during the sentencing phase of petitioner's trial. See *Clark v. Townley*, 791 F.2d 925 (4th Cir.1986) (unpublished); *Pickens v. Lockhart*, 714 F.2d 1455 (8th Cir.1983). In both cases, the courts found that the defendants' attorneys' failure adequately to explore and present mitigating evidence demonstrating defendants' troubled backgrounds was unreasonable representation and prejudicial to the defendants' defense at sentencing. Thus, each court concluded that the defendants' were entitled to resentencing. Whitley now contends that these two decisions constitute persuasive authority for a finding that Whitley's defense at sentencing was prejudiced by his trial attorneys' failure to develop and use the potentially mitigating evidence described above. We are not convinced.

The Supreme Court has recognized that the determination of whether an attorney's unreasonable performance prejudiced his client's defense is one that must be judged according to the circumstances of each case. See *Strickland v. Washington*, 466 U.S. 668, at 693, 104 S.Ct. 2052, 2067–68, 80 L.Ed.2d 674. On the facts of this case, in particular those overwhelming facts relating to the heinous nature of the crime with which Whitley was charged and convicted, as well as the fact that any mitigating evidence that Whitley's trial counsel might have developed and presented would have been accompanied by additional aggravating evidence, we conclude that Whitley's trial attorneys' alleged errors in failing to develop such mitigating evidence did not result in such prejudice to Whitley's defense at sentencing that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. See *Moore v. Maggio*, 740 F.2d 308, 318 (5th Cir.1984); *Briley v. Bass*, 750 F.2d 1238, 1248 (4th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1984).

In sum, we find that the negative aspects of any testimony that Whitley now contends his trial counsel failed to present during the sentencing phase of Whitley's trial far outweighed any positive mitigating effect that such testimony might have had. Thus, we find that the district court correctly determined that there was no prejudice to Whitley as a result of his trial counsel's alleged deficiencies during the sentencing phase of Whitley's trial. We affirm the district court's ruling on that ground. We reiterate that we do not reach the question of whether or not Whitley's trial counsel actually were deficient in their representation of Whitley at this phase of the proceedings, and we emphasize that we do not in any way adopt the district court's finding in this regard.

## II.

As his second point on appeal, Whitley contends that the district court incorrectly concluded that the majority of Whitley's claims in his federal habeas corpus petition were barred from consideration in federal court under the doctrine of procedural default set forth in *Wainwright v. Sykes*. Whitley argues that such error necessitates a remand to the district court for consideration of these claims on their merits. We conclude that the district court correctly disposed of these claims on procedural grounds and affirm the district court's judgment in this regard as well.[17]

---

17. Due to the necessarily complicated nature of the discussion on the question of procedural default (there were seventy-one claims made in the various appeals and habeas proceedings in this case, including duplication), our holdings with regard to each of the claims on which Whitley alleges the district court erred in ruling them to be procedurally defaulted is summarized in a readable fashion below. The district court addressed all

the balance of the claims made in the federal habeas petition on their merits. We add at this point that Whitley does not now appeal all the adverse holdings the district court made on the merits of the issues presented to it.

Our conclusions with regard to each of the claims on which the district court held Whitley was procedurally barred are as follows: *Claim 5 (prosecutor's allegedly improper remarks during guilt phase of Whitley's trial*): procedurally barred due to Whitley's failure to raise the issue at trial, and due to Whitley's failure to appeal state habeas court's ruling that Whitley had procedurally defaulted on this claim. (Joint Appendix 225 & 536 et seq.) On direct appeal, the Virginia Supreme Court held this claim was procedurally barred because not raised at trial. *Whitley v. Commonwealth,* 223 Va. at 76, 286 S.E.2d 162. *Claim 10 (alleged denial of assistance of counsel without Whitley's valid waiver of same):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal state habeas court's ruling that Whitley had procedurally defaulted on this claim. (Joint Appendix 224 & 536 et seq.)

*Claim 11 (alleged ineffective assistance of counsel during guilt phase of Whitley's trial):* procedurally barred as to every allegation in this claim except the allegation that Whitley's counsel failed to conduct adequate voir dire of the jury concerning their willingness to impose the death penalty, due to Whitley's failure to appeal the state habeas court's adverse rulings on these allegations on their merits. (Joint Appendix 226 & 536 et seq.) (with regard to the voir dire allegation, the district court rejected this allegation on its merits, a ruling from which Whitley does not appeal).

*Claim 14 (removal of jurors who expressed scruples against the death penalty):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 224 & 536 et seq.) *Claim 15 (introduction of Whitley's involuntary custodial statements during guilt phase of Whitley's trial):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 224 & 536 et seq.) *Claim 18 (introduction of Whitley's allegedly involuntary custodial statements during the sentencing phase of Whitley's trial):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 224 & 536 et seq.)

*Claim 24 (no jury instruction on definition of aggravated battery as requiring severe physical abuse of the victim):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.) *Claim 25 (no jury instruction on definition of aggravated battery as requiring a killing that is quantitatively and qualitatively more than that required for ordinary murder):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal prior to his reply brief, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.) On direct appeal, the Virginia Supreme Court held this claim to be procedurally barred under Rule 5:21. See *Whitley v. Commonwealth,* 223 Va. at 79 n. 2, 286 S.E.2d 162. *Claim 27 (erroneous malice instruction):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.)

*Claim 28 (no jury instruction on torture component of the Virginia capital murder statute):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.)

*Claim 29 (inadequate mitigation instructions):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.)

*Claim 30 (no jury instruction on fact that jury could sentence Whitley to life imprisonment for any reason, or even for no reason):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.)

*Claim 31 (no jury instruction in sentencing phase that jury could find battery to be aggravated only if they found that victim was still alive when battery occurred):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.) *Claim 32 (state psychologist's testimony during sentencing phase of Whitley's trial violated Whitley's fifth amendment rights):* procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due

In his federal habeas corpus petition, Whitley raised numerous issues that he had previously raised in his state habeas corpus petition, but that he had not raised at trial or on direct appeal.[18] Whitley did not appeal to the Virginia Supreme Court, moreover, the circuit court's adverse ruling on the majority of these claims in Whitley's state habeas corpus proceeding.[19]

In addition to this large category of claims, Whitley also reraised in his federal habeas corpus petition one claim that he had raised at trial, on direct appeal, and in his state habeas corpus petition, but not in his appeal from the circuit court's denial of his state habeas corpus petition.[20] Finally, there were also in Whitley's federal habeas corpus petition three claims that Whitley had raised on direct appeal and in his state habeas corpus petition, but not at his trial, nor in his state habeas appeal.[21]

The federal district court considered to be procedurally barred under *Wainwright v. Sykes* any claim which either had not been presented to the Virginia Supreme Court or had been held by the state courts to be procedurally barred.[22] Thus, of the nineteen claims that Whitley raised in his federal habeas corpus petition, the district court considered only five on the merits,[23] dismissing each as being without merit.

Of the eleven claims on which the Virginia Supreme Court ruled on the merits in Whitley's direct appeal, see note 1, *supra*, Whitley raised only three in his federal habeas corpus petition. See note 2, *supra* (claims 1, 2 & 3). The district court disposed of each of these claims on the merits, a disposition from which Whitley does not appeal.

to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.) *Claim 35 (Ake claim)*: procedurally barred due to Whitley's failure to raise the issue at trial or on direct appeal, and due to Whitley's failure to appeal the state habeas court's ruling that the claim was procedurally barred. (Joint Appendix 225 & 536 et seq.)

**18.** See note 2, *supra* (claims 10, 11, 12, 14, 15, 18, 24, 25, 27–32 & 35). For a discussion of the circuit court's disposition of these claims, see note 3, *supra*.

**19.** Whitley raised only two issues in his appeal from the circuit court's dismissal of his state habeas corpus petition. See text accompanying note 5, *supra*. The Virginia Supreme Court found that the circuit court had properly disposed of these claims on their merits and refused Whitley's petition for appeal.

**20.** The claim concerned the trial court's allegedly erroneous admission of a photograph of the victim. See note 2, *supra* (claim 3). Whitley does not raise that claim here, however.

**21.** See note 2, *supra* (claims 1, 2 & 5).

**22.** Thus, the district court considered Whitley to have procedurally defaulted on fourteen of the nineteen claims that he raised in his federal habeas corpus petition. See note 2, *supra* (claims 5, 10, 14, 15, 18, 24, 25, 27–32 & 35). With regard to Whitley's claim that his trial counsel rendered constitutionally ineffective assistance during the guilt phase of Whitley's trial (claim 11), the district court considered all but Whitley's allegation of ineffective assistance during voir dire of the jury to be procedurally barred from consideration by a federal habeas court.

**23.** See note 8, *supra,* and accompanying text; see also note 2, *supra* (claims 1, 2, 3, 11 (in part) & 12).

In ruling on Whitley's contentions in his state habeas appeal, the Virginia Supreme Court relied on the U.S. Supreme Court's opinion in *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), to dispose of Whitley's claim that his counsel rendered ineffective assistance during the guilt phase of Whitley's trial by failing to conduct adequate voir dire of certain jurors concerning their willingness to impose the death penalty. See note 2, *supra* (claim 11). In *Witt,* the Supreme Court held that the proper standard for determining when a prospective juror may be excluded for cause because of his views on capital punishment is whether the juror's views would prevent or substantially impair the performance of his duties as a juror. Given this standard, the Supreme Court reversed the Court of Appeals grant of a writ of habeas corpus, holding that the Court of Appeals had focused unduly on the lack of clarity of the questioning of the prospective juror, and on whether the juror's answers indicated she would automatically vote against the death penalty. By relying on the Supreme Court's holding in *Witt* in disposing of Whitley's claim of ineffective assistance during voir dire, the Virginia Supreme Court apparently was holding that it was rejecting Whitley's contention that his counsel unreasonably represented him by failing to ask certain questions during

In this appeal, the only substantive ruling that Whitley challenges concerns the district court's disposition of Whitley's claim that his trial counsel allegedly failed to investigate and present potentially mitigating evidence during the sentencing phase of Whitley's trial. We have in this opinion already affirmed the district court's disposition of this claim. Because Whitley does not appeal from the district court's disposition on the merits of his other four claims, we need not, and do not, address them here.

■ Whitley does appeal from the district court's disposition of the majority of his claims on the ground of procedural default.[24] In particular, Whitley argues that the district court erroneously applied the doctrine of procedural default to those of his claims that he raised in his state habeas corpus petition, but did not appeal to the Virginia Supreme Court in his state habeas appeal.[25] Whitley raises three separate arguments in this regard.

First, in a footnote in his brief, Whitley argues that the district court erred in concluding that the doctrine of procedural default is applicable to a federal habeas corpus petitioner's failure to raise issues on appeal in a state postconviction proceeding. Second, Whitley argues that he did not default on his state habeas corpus claims by failing to appeal them to the Virginia Supreme Court because he complied with applicable Virginia procedure, thereby preserving his claims for federal habeas corpus review. Third, and finally, Whitley claims that he can show "cause" and "prejudice" for his failure to appeal any defaulted claim, thereby preserving for federal review those claims for which he can make such a showing, see *Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506–07, and that he should be given an opportunity to make such a showing on remand to the district court.[26] We consider each of these arguments separately below.

voir dire because the holding in *Witt* indicated that such questions were not required. Thus, in passing on the merits of Whitley's ineffective assistance claim, the Virginia Supreme Court also arguably commented on the merits of Whitley's claim that he was deprived of due process by the trial court's alleged premature exclusion for cause of several jurors who gave equivocal answers concerning their readiness to impose the death penalty. See note 2, *supra* (claim 14).

If the Virginia Supreme Court did, in fact, comment on the merits of Whitley's claim 14, then the district court's conclusion below that Whitley had defaulted on this claim was error. Nevertheless, assuming without deciding that such was the case, we would conclude that such error, if any was committed, was harmless inasmuch as we have examined the substance of Whitley's claim 14 and have concluded that it is without merit. See *Wainwright v. Witt*, 469 U.S. 412, 429–32, 105 S.Ct. 844, 854–56, 83 L.Ed.2d 841 (1985); *Lockhart v. McCree*, — U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

**24.** This disposition encompassed fifteen of Whitley's claims. *See* note 2, *supra* (claims 5, 10, 11 (in part), 14, 15, 18, 24, 25, 27–32 & 35).

**25.** In an effort to expand the scope of his contentions concerning the procedural default issue, Whitley argues in his brief that the dis-

trict court held that the majority of Whitley's claims were procedurally barred not because they were not raised at trial or on direct appeal but rather because Whitley's state habeas counsel did not include those claims in Whitley's petition for appeal to the Virginia Supreme Court in Whitley's state habeas appeal. We do not believe that the district court's holding was so narrow. Rather, our reading of the district court's opinion is that the district court considered the majority of Whitley's claims to be procedurally barred due to Whitley's defaults at trial and on direct appeal, as well as to those defaults in the state habeas proceeding.

**26.** Whitley recognizes in his brief that there are numerous issues, later raised, for which his appellate counsel on direct appeal failed to fulfill the requirements of Virginia Supreme Court Rule 5:21. Nevertheless, Whitley contends that he should not be barred from raising these claims in his federal habeas corpus petition because he can show valid cause for his appellate counsel's failure to raise these claims and prejudice resulting therefrom. Consequently, our ruling with regard to Whitley's contentions concerning his ability to show a valid cause and prejudice for his defaults at the state habeas level also encompasses Whitley's contentions concerning claims for which Whitley's appellate counsel failed to fulfill the requirements of Rule 5:21.

A. *Applicability of Procedural Default Bar to Claims that Whitley Raised in State Habeas Corpus Petition, but Failed to Raise in State Habeas Appeal.*

In his argument on this point, Whitley recognizes, as did the district court, that this circuit has already decided that failure to appeal claims disposed of by a state habeas trial court constitutes a procedural bar to further federal review of such claims. See *Mason v. Procunier,* 748 F.2d 852 (4th Cir.1984). In a brief opinion in *Mason,* another Virginia death penalty case, this court affirmed a federal district court's conclusion that the doctrine of procedural default barred federal review of any claim that the petitioner had raised in his state habeas corpus petition, but had failed to appeal to the Virginia Supreme Court. *Id.* at 853. Relying on the brevity of the court's opinion in *Mason,* and on dictum in a recent decision from the U.S. Court of Appeals for the Eleventh Circuit, see *Francis v. Spraggins,* 720 F.2d 1190, 1192 n. 3 (11th Cir.1983) (noting that extension of procedural default doctrine to defaults at state habeas corpus level was undecided in that circuit and that court thought the question might raise serious policy questions perhaps best left to Congress), cert. denied, 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1984),[27] Whitley now argues that our decision in *Mason* is both casual and inappropriate. We disagree.

In the first place, the holding of the court in *Mason* with regard to the procedural default issue constitutes circuit precedent which we follow. In the second place, our conclusion in *Mason* is supported by quite recent Supreme Court reasoning. A State's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack. See *Murray v. Carrier,* — U.S. —, —, 106 S.Ct. 2639, 2646–48, 91 L.Ed.2d 397 (1986). And, as the Supreme Court has stated in another context, the concerns of comity and finality which underpin *Wainwright v. Sykes* and its progeny are virtually identical regardless of the timing of a petitioner's failure to comply with legitimate state rules of procedure. See *Smith v. Murray,* — U.S. —, —, 106 S.Ct. 2661, 2665–67, 91 L.Ed.2d 434 (1986). These concerns cause us to conclude, even apart from our previous decision in *Mason,* that the doctrine of procedural default should apply in state postconviction appeals.

B. *Whitley's Compliance with Virginia's Procedural Requirements*

In his second argument with regard to the procedural default issue, Whitley contends that the district court misinterpreted Virginia's procedural default requirements for the preservation of issues for appeal. As a result, Whitley further contends that the district court erred in holding that Whitley violated state procedural rules by failing to appeal his defaulted claims in his state habeas appeal. We disagree.

There are two Virginia procedural rules that are relevant to Whitley's appeal in this regard: Virginia Supreme Court Rule 5:21, and the rule of *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). Virginia Supreme Court Rule 5:21, in effect at the time of Whitley's trial and state habeas corpus proceeding,[28] provided, in pertinent part, as follows:

> The petition for appeal shall contain assignments of error.... Error will not be sustained to any ruling below unless the objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this court to attain the ends of justice. Only errors assigned in the petition for appeal will be noticed by this Court and no error

---

**27.** We note in passing that the court in *Spraggins* explicitly left open the question of the applicability of the doctrine of procedural default to defaults at the appellate level in a state habeas corpus proceeding. See *Francis v. Spraggins,* 720 F.2d at 1192 n. 3.

**28.** Rule 5:21 was repealed effective August 1, 1985. It has been reinstated in substantially similar form as Virginia Supreme Court Rules 5:17 and 5:25.

not so assigned will be admitted as a ground for reversal of a decision below. An assignment of error which merely states that the judgment is contrary to the law and the evidence is not sufficient. VA.S.CT.R. 5:21 (1983).

The Virginia Supreme Court has held Rule 5:21 to be applicable in both civil and criminal cases. See *Peterson v. Commonwealth*, 225 Va. 289, 302 S.E.2d 520, *cert. denied*, 464 U.S. 1004, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983) (death penalty case); *First Charter Land Corp. v. Middle Atl. Dredging, Inc.*, 218 Va. 304, 237 S.E.2d 145 (1977). This court has held that a federal habeas corpus petitioner's failure to comply with the contemporaneous objection requirement embodied in Rule 5:21 is a legitimate ground for the application of the procedural default doctrine to bar a federal court's consideration of the petitioner's constitutional claims. *Frazier v. Weatherholtz*, 572 F.2d 994, 997 (4th Cir.), *cert. denied*, 439 U.S. 876, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978); see also *Murray v. Carrier*, —— U.S. at ——, 106 S.Ct. at 2665–67. We have previously noted that the Virginia courts have consistently applied this procedural default rule with little flexibility. See *Conquest v. Mitchell*, 618 F.2d 1053, 1056 (4th Cir.1980).

In *Slayton v. Parrigan*, the Virginia Supreme Court effectively extended the preclusive effect of Rule 5:21 to Virginia habeas corpus proceedings. In *Slayton*, the defendant was convicted of armed robbery and the Virginia Supreme Court affirmed his conviction on direct appeal. *Slayton v. Parrigan*, 215 Va. at 27–28, 205 S.E.2d at 681. In his subsequent state habeas corpus petition, the defendant alleged, among other things, that his pretrial identification was impermissibly suggestive and that it had tainted his in-court identification. On appeal from the circuit court's dismissal of defendant's habeas corpus petition, the Virginia Supreme Court declared that the de-

fendant's failure to object to the pretrial identification, either at trial or on direct appeal, precluded the defendant from raising the issue in his state habeas corpus proceeding. The Virginia Supreme Court concluded that:

> The trial and appellate procedures in Virginia are adequate in meeting procedural requirements to adjudicate State and Federal constitutional rights and to supply a suitable record for possible habeas corpus review. A prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction. Since the issue of the alleged constitutionally improper pretrial identification could have been raised and adjudicated at petitioner's trial and upon his appeal to this court, Parrigan had no standing to attack his final judgment of conviction by habeas corpus.

*Id.* 215 Va. at 30, 205 S.E.2d at 682.[29]

Whitley now argues that his state habeas counsel's failure to appeal claims that the circuit court had dismissed under the rule of *Slayton v. Parrigan* did not violate any Virginia procedural rule. Emphasizing the Virginia Supreme Court's language in *Slayton* to the effect that a state habeas corpus petitioner lacks *standing* to raise claims in his state habeas corpus petition that he could have raised at trial or on direct appeal, Whitley contends that the circuit court's ruling that the majority of his claims fell within the rule of *Slayton v. Parrigan* deprived Whitley of the standing necessary to appeal the merits of those claims to the Virginia Supreme Court. Thus, Whitley concludes, the absence of those issues from his petition for appeal in his state habeas corpus proceeding cannot be deemed an unwarranted bypass of an available state remedy that would bar a federal court from considering those same

---

**29.** The primary exception to the Virginia courts' strict application of the *Slayton* rule arises in situations in which a state habeas corpus petitioner can show that the issue in question was not raised previously due to

the ineffective assistance of petitioner's trial and appellate counsel. See *Slayton v. Parrigan*, 215 Va. at 29, 205 S.E.2d at 682; see also *Crowell v. Zahradnick*, 571 F.2d 1257, 1259, n. 2 (4th Cir.1977).

issues in a federal habeas corpus proceeding.

Although superficially appealing, Whitley's argument in this regard is ultimately unpersuasive for it assumes the correctness of the state circuit court's finding of procedural default at the trial or on direct appeal, thereby rendering superfluous the question whether Whitley defaulted a second time by failing to appeal the merits of his defaulted claims in his state habeas appeal. Indeed, it is Whitley's failure to appeal from the circuit court's finding of procedural default on these claims that exposes the inherent weakness of Whitley's argument in this regard. If, on appeal, the Virginia Supreme Court had concluded that the circuit court had incorrectly found Whitley's claims were barred from consideration due to his procedural defaults, then Whitley would have had standing either to have the Virginia Supreme Court consider those claims on their merits in that appeal, or, more likely, to have the circuit court consider them on remand.[30] Whitley's failure to appeal from the circuit court's ruling on procedural default, therefore, deprived the Virginia Supreme Court of the opportunity to rule on the merits of his claims. We consider such failure to constitute a violation of the requirements of Rule 5:21, which applies to appeals of all Virginia cases, civil or criminal, and conclude that

such violation constitutes a procedural default sufficient to preclude federal court review of the merits of those claims on which the circuit court declared Whitley to have defaulted.[31] See *Smith v. Murray*, —— U.S. at ——, 106 S.Ct. at 2665–67 (" '[a]llowing criminal defendants to deprive state courts of [the] opportunity' to reconsider previously rejected constitutional claims is fundamentally at odds with the principles of comity that animate *Sykes* and its progeny") (quoting *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982)).

### C. Cause for Whitley's Failure to Raise His Defaulted Claims and Prejudice Resulting Therefrom.

Having concluded that the district court correctly determined that Whitley did procedurally default on the majority of his claims in his federal habeas corpus petition, Whitley may still escape the bar of procedural default if he can establish a valid cause for his default and actual prejudice resulting therefrom. See *Wainwright v. Sykes*, 466 U.S. at 87, 97 S.Ct. at 2506–07. Thus, as his third, and final, argument with regard to procedural default, Whitley contends that the district court erroneously concluded that Whitley had failed to establish sufficient cause for his procedural de-

---

**30.** If, on the other hand, on appeal, the Virginia Supreme Court had ruled that the circuit court did correctly rule that Whitley had procedurally defaulted on the majority of his claims, such default would constitute a sufficient basis for the application of the *Wainwright v. Sykes* procedural bar. See *Frazier v. Weatherholtz*, 572 F.2d 994, 997 (4th Cir.), *cert. denied*, 439 U.S. 876, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978); cf. *Hankerson v. North Carolina*, 432 U.S. 233, 237 n. 3, 238, 97 S.Ct. 2339, 2342 n. 3, 2342, 53 L.Ed.2d 306 (1977) (noting that if state supreme court rules on merits of claim on which habeas corpus petitioner had procedurally defaulted, then federal court may rule on merits of claim as well).

**31.** As a corollary to this argument, Whitley argues that even if Virginia Supreme Court Rule 5:21 did require him to present his defaulted claims in his state habeas appeal, along with a claim the circuit court's procedural default ruling was incorrect, the doctrine of proce-

dural default is nevertheless inapplicable in his circumstance because the rule is not so firmly established and regularly followed as to compel federal deference. See *James v. Kentucky*, 466 U.S. 341, 348, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984) (stating that federal habeas corpus petitioner's failure to comply with applicable state procedures can prevent federal review of petitioner's constitutional claims only if the state's procedures are firmly established and regularly followed). We have previously noted that the Virginia courts have consistently applied their procedural default rules. See *Conquest v. Mitchell*, 618 F.2d 1053, 1056 (4th Cir.1980). And our decision in *Mason v. Procunier*, 748 F.2d 852 (4th Cir.1984), as we have stated, decided that the doctrine of procedural default is applicable in the context of a state habeas appeal. Consequently, we reject Whitley's arguments in this regard as well.

faults to escape *Sykes'* procedural bar.[32] Whitley contends, therefore, that if this court should find, as we have, that Whitley did procedurally default on the majority of his claims, then we should remand the case to the district court for reconsideration of Whitley's claims of cause for his procedural defaults both at the trial and on direct appeal, as well as for his procedural defaults in his state habeas corpus proceeding. Once again, we disagree.

The Supreme Court has recently addressed the definition of cause for purposes of the *Wainwright v. Sykes* procedural bar. See *Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); see also *Smith v. Murray,* —— U.S. ——, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). In *Carrier,* Clifford Carrier was indicted for rape and abduction. Before trial, Carrier's court-appointed counsel moved for discovery of the victim's statements concerning her assailants, the vehicle her assailants were driving, and the location at which the rape occurred. The circuit court denied the motion. After Carrier's conviction, his counsel filed a notice of appeal with the Virginia Supreme Court, which assigned seven errors as bases for reversing Carrier's conviction. One of these alleged errors was that the trial court erred in denying Carrier's motion for discovery of the victim's statements. Carrier's counsel subsequently failed to include this claim in Carrier's petition for appeal, however, thereby precluding the Virginia Supreme Court from considering it pursuant to Virginia Supreme Court Rule 5:21.[33] See *Id.* at ——, 106 S.Ct. at 2642–44.

After exhausting his state habeas corpus remedies, Carrier filed a habeas corpus petition in federal district court. Carrier included his procedurally defaulted discovery claim in his federal habeas corpus petition. The district court denied the petition, holding that under *Wainwright v. Sykes,* Carrier's procedural default precluded federal review of Carrier's discovery claim. See *id.*

On appeal, Carrier asserted that his procedural default should be excused because his counsel's failure to include the discovery claim in Carrier's petition for appeal had been the product of the attorney's ignorance or oversight, and not a deliberate tactical choice. En banc, this court held that oversight or ignorance that was not deliberately tactical could constitute cause for purposes of the *Wainwright v. Sykes* showing. See *Carrier v. Hutto,* 754 F.2d 520 (4th Cir.1985) (per curiam) (en banc), adopting the majority opinion in 724 F.2d 396 (4th Cir.1983), rev'd sub nom, *Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The Supreme Court explicitly rejected this holding.

In broad language, the Court stated that the question of cause for a procedural default does not turn on whether a habeas corpus petitioner's counsel erred or on the kind of error that counsel may have made. Rather, the Court held that:

> [s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense imped-

---

**32.** Whitley contends that his research has uncovered a valid cause for his state habeas counsel's procedural defaults, namely that his state habeas counsel did not present many claims in Whitley's state habeas appeal because she, being demoralized by a recent decision against her, had the understanding that Virginia law did not require the inclusion in the petition for appeal of all claims on which the circuit court had

ruled Whitley had procedurally defaulted in order to preserve those claims for future federal review. Whitley does not raise any contention in this appeal regarding a valid cause for his trial and appellate attorneys' procedural defaults on direct appeal.

**33.** See *supra* for text of Rule 5:21.

ed counsel's efforts to comply with the State's procedural rule.

*Murray v. Carrier,* — U.S. at —, 106 S.Ct. at 2644–46.

The Supreme Court went on to discuss external objective factors that would constitute cause.[34] These factors included a showing that the factual or legal basis for a claim was not reasonably available to counsel, that government officials interfered with the defense, or that the procedural default was the result of constitutionally ineffective assistance of counsel. *Id.* at 4822–23. Finally, to prevent manifest miscarriages of justice, the Court recognized another narrow exception to the procedural default bar, stating that:

> in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal court may grant the writ even in the absence of a showing of cause for the procedural default.

*Id.* at 4825.

Because the Court was not certain whether the victim's statements actually established Carrier's innocence, the Court remanded the case to the district court for further proceedings consistent with that opinion. See *id.*

In the present case, Whitley has pointed to no objective factor, external to his defense, either at his trial, on direct appeal, or in his state habeas corpus proceeding, that would constitute cause under the Supreme Court's recent definition of that term in *Carrier.*[35] Cf. *Smith v. Murray,* — U.S. at —, 106 S.Ct. at 2665–67 (holding that deliberate tactical decision not to pursue particular claim is very antithesis of kind of circumstance that would warrant excusing defendant's procedural default). Moreover, although the Supreme Court in *Carrier* remanded that case for a determi-

nation of whether the victim's statements could have established Carrier's actual innocence, thereby exploring another possible exception to the requirement of a showing of cause for a procedural default, we do not believe such a remand is called for in this case. Given the extensive record below establishing Whitley's guilt, including, among other things, Whitley's own admissions, we do not believe that refusal to consider Whitley's defaulted claims on their merits carries with it the risk of a manifest miscarriage of justice. See *Smith v. Murray,* — U.S. at —, 106 S.Ct. at 2667–69.

### III.

In sum, we hold that the district court properly found the majority of Whitley's claims to be barred from federal review as a result of Whitley's procedural defaults either at the trial level, on direct appeal, or in his state habeas corpus proceeding.[36] We further hold that the district court properly found that Whitley was not denied effective assistance of counsel at the sentencing phase of his trial.[37]

In affirming the district court's denial of Whitley's petition for a writ of habeas corpus, we note that the seriousness of the penalty imposed on Whitley for his crimes makes us reluctant to dismiss the majority of his claims on the ground of procedural default. Nevertheless, the recent statements of the Supreme Court on the subject persuade us not only that further discussion of the merits of those defaulted claims is unnecessary, but also that such discussion is inappropriate. See *Smith v. Murray,* — U.S. at —, 106 S.Ct. at 2665–67 (stating that although federal habeas court must at all times retain power to look beyond state procedural forfeitures, exercise of that power ordinarily is inappropriate unless defendant succeeds in showing both

---

**34.** The Court explicitly noted that this list of factors was not exhaustive. See *Murray v. Carrier,* — U.S. at —, 106 S.Ct. at 2644–46.

**35.** For a discussion of Whitley's claims of cause for his state habeas counsel's procedural defaults, see note 32, *supra.*

**36.** For a summary of our holdings with regard to each issue on which we have conclud-

ed Whitley has procedurally defaulted, see note 17, *supra.*

**37.** See note 13, *supra* (discussing third corollary issue that Whitley raised in his brief, but which, for reasons stated above, we need not address here).

cause for his noncompliance with state rule and actual prejudice resulting from the alleged constitutional violation); see also *id.* — U.S. at ——, 106 S.Ct. at 2667–69 (explicitly rejecting suggestion that principles of *Wainwright v. Sykes* apply differently depending on nature of penalty that state imposes for violation of its criminal laws).

Accordingly, the judgment of the district court is

AFFIRMED.