## Richmond

### FIRST CHARTER LAND CORPORATION V. MIDDLE ATLANTIC DREDGING, INC. AND EAST COAST DREDGING, INC.

September 1, 1977.

Record No. 760857.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

Richard R. Nageotte (Robert J. Zelnick; Nageotte, Borinsky & Zelnick, on brief), for plaintiff in error.

Daniel Hartnett (Ayres, Hartnett & Custis, on brief), for defendants in error.

HARMAN, J., delivered the opinion of the Court.

This action was commenced by a motion for judgment filed by Middle Atlantic Dredging, Inc. (Middle Atlantic or plaintiff) against First Charter Land Corporation (First Charter or defendant) seeking to recover the sum of $83,293.43 which plaintiff alleged was due it under a contract for diking, dredging and filling in connection with the defendant's real estate development known as "Captain's Cove" in Accomack County. First Charter, in addition to its answer and various grounds of defense, filed a counterclaim against Middle Atlantic asking $10,000,000 for damages it alleges were caused by Middle Atlantic's breach of contract. First Charter also filed and served a third party motion for judgment seeking to recover damages from East Coast Dredging, Inc. (East Coast), the parent company of Middle Atlantic, which had guaranteed Middle Atlantic's performance of its contract with First Charter.

After a lengthy trial, the jury returned a verdict against First Charter awarding Middle Atlantic $75,148.03 and a verdict in favor of Middle Atlantic on the defendant's counterclaim. On March 2, 1976, the trial court entered judgment on the jury's verdict. We granted a writ of error with supersedeas.

The questions posed by this appeal are:

(1) Whether the trial court erred in permitting Middle Atlantic to introduce into evidence its "Exhibit 4" which it had not produced for defendant's inspection on discovery prior to trial;

(2) Whether the trial court erred in holding Chapter 7 of Title 54 of the code (Code § 54-113 et seq.) did not bar the plaintiff's recovery or create a jury question on that issue, where it was conceded that the plaintiff had failed to register with the State Registration Board for Contractors; and

(3) Whether the trial court erred in granting and refusing certain instructions.

The parties began negotiating in November, 1969, and reached an oral agreement on or about February 4, 1970. The parties acknowledge that Middle Atlantic, under the oral agreement, was to receive 47 cents per cubic yard for material dredged and filled, 70 cents per linear foot of dike and a "one time mobilization charge" of $5000 for moving a dredge to the work site. They also agreed that an estimated 800,000 cubic yards of material were to be dredged and filled by Middle Atlantic in completing the contract.

Diking was commenced shortly after the agreement was reached, and dredging and filling started in late March or early April after the plaintiff's dredge arrived at the project. The plaintiff continued to work on the project until August, 1970, when a "stop order" against further dredging was entered by the Virginia State Water Control Board after a "clam kill". The "clam kill" occurred when one of the dikes on the project failed and spilled dredging spoils into the adjacent waters. As a result of the stop order, the dredging came to the attention of a federal agency, the United States Army Corps of Engineers. Since no permit had been obtained by First Charter from the federal agency to dredge in public waters adjoining Captain's Cove, criminal charges were lodged against First Charter. No further dredging took place between the stop order and trial, as First Charter was not successful in obtaining a dredging permit.

On October 20, 1970, approximately two months after the dredging at Captain's Cove was stopped, First Charter, Middle

Atlantic and East Coast signed an agreement dated February 4, 1970. This agreement described the work to be performed by Middle Atlantic as follows:

"Hydraulic dredge all canals and channels to a depth of -5' (-6' allowed for pay) mean sea level; dike all canals and perimeter at water's edge, for sod or bulkhead to be applied by others; spread and grade dredged material to +4' mean sea level, grade to sheet drain."

The same unit prices and mobilization fee agreed upon orally were set forth in the written agreement, with a proviso for "[q]uantities to be determined by Prince William Engineering Co." B. Calvin Burns, owner of Prince William Engineering Co., is a certified civil engineer and was one of the three stockholders in First Charter.

Between March and October of 1970, First Charter made partial payments of $187,935.37 to Middle Atlantic on monthly estimates of work performed. $40,000 of that sum was paid on October 20, contemporaneously with the execution of the written agreement. When First Charter refused to pay Middle Atlantic's final bill for $83,293.43, action was instituted by Middle Atlantic.

■ First Charter's first assignment of error is directed to the action of the trial court in admitting Middle Atlantic's "Exhibit 4". This exhibit is a summary sheet and supporting documents prepared by Middle Atlantic's field office manager, based upon soundings made at the job site by one of the company's field crews. The exhibit was crucial to the plaintiff's case as it showed that Middle Atlantic dredged and filled 485,467.66 cubic yards of material while working at Captain's Cove. Middle Atlantic's final bill for dredging was based on the quantities dredged as shown by this summary.

When the exhibit was proffered at trial, the defendant objected to its admission because it had not been produced for inspection and copying at pretrial discovery proceedings under Rule 4:9 [1]. Middle Atlantic concedes here, as it did in the trial court, that the exhibit was covered by the defendant's discovery request.

---

[1] The defendant also argues that the trial court erred in ruling the document admissible under the shopbook exception to the hearsay rule. While objection to that ruling was made at trial, we will not entertain the question here as the defendant failed to preserve it in its Assignments of Error. Rule 5:21, former Rule 5:7.

Inquiry by the trial court disclosed that the exhibit was not produced because it had been lost or misplaced by the plaintiff. Upon its discovery the week preceding trial, plaintiff's attorney promptly notified defense counsel by telephone that additional documents had been located, and a copy of the exhibit was hand delivered to defense counsel on the first morning of the six day trial.

Based on this information, the trial court indicated that it would admit the exhibit but, to alleviate the surprise claimed by the defendant, offered it a recess for sufficient time to study, examine and check the exhibit, or alternatively, if the defendant chose to then proceed, the court would require plaintiff to make its witnesses available for further cross-examination after the defendant had sufficient time and opportunity to fully check, study and examine the exhibit. Defendant, reserving its objection, chose the alternative.

Conceding that the trial court is vested with broad discretion under Rule 4:12 in determining what sanctions will be imposed upon a party who fails to disclose upon discovery, First Charter argues that the trial court nevertheless erred in failing to hold "Exhibit 4" inadmissible because of plaintiff's failure to produce it on discovery.

█ We affirm the trial court's ruling on this point. Proof of the quantity of material dredged by Middle Atlantic was the heart of its case. First Charter knew, from the allegations in the motion for judgment and from Middle Atlantic's final bill, that Middle Atlantic claimed that it had dredged 485,467.66 cubic yards of material at Captain's Cove. Plaintiff had voluntarily responded to defendant's demand for documents under Rule 4:9, and a large number of Middle Atlantic's records, more than 250 documents according to counsel, were delivered to and left with plaintiff's counsel so that he might examine and copy them at his convenience. The defendant knew that plaintiff, according to the customary practice in the trade, had to conduct soundings and make calculations of the type found in "Exhibit 4" in order to determine the quantity of materials dredged for a final billing, yet no objection or complaint to a failure to present such a document upon discovery was made by the defendant, nor were sanctions sought by First Charter prior to trial. When the document was located, less than a week before trial, defendant's

counsel was promptly notified and a copy of the document delivered to him on the morning of the first day of trial.

In such circumstances, where the trial court found plaintiff's failure on discovery was inadvertent, there was no abuse of the court's discretion in imposing the sanctions which it did, rather than the sanctions sought by the defendant.

Defendant's second assignment of error challenges the trial court's ruling that Chapter 7 of Title 54 of the Code did not bar plaintiff's recovery or create a jury question on this issue. This chapter regulates the registration of certain contractors by the State Registration Board for Contractors and provides for penalties for violation of its provisions. Middle Atlantic admits that the work it performed for First Charter made it a contractor within the purview of Chapter 7.

The specific section of Chapter 7 relied upon by First Charter is Code § 54-142. A brief review of the history of Code § 54-142 and Chapter 7 is necessary to an understanding of the statute and the cases decided under it.

The State Registration Board for Contractors was created by the General Assembly in 1938. Acts, 1938, c. 431. Section 12 of that act was the statutory ancestor to Code § 54-142. Under § 12, later codified as § 4359(114) of the 1942 Code, it was a misdemeanor for a general contractor, as defined in the act, to engage in business without first obtaining a Certificate of Registration after meeting the requirements of the act.

The 1944 General Assembly extended the act to require subcontractors, as defined by the amendment, to obtain a Certificate of Registration from the board before engaging in business. The 1944 amendment rewrote the penal provision of the act to provide:

"Section 12. Any person, firm, association or corporation not being duly authorized who shall contract for or bid upon the construction of any of the projects or works or any part thereof enumerated in section one of this act, without having first complied with the provisions hereof, or who shall attempt to practice general contracting or subcontracting in this State, except as provided for in this act, and any person, firm, association or corporation presenting or attempting to file as his own the registration certificate of another or who shall

give false or forged evidence of any kind to the board or to any member thereof in maintaining a certificate of registration or who falsely shall impersonate another or who shall use an expired or revoked certificate, and any awarding authority, who knowingly receives or considers a bid from any one not properly registered under this act, shall be deemed guilty of a misdemeanor and the board may in its discretion use its funds to defray the expense, legal or otherwise in the prosecution of any violations of this act." Acts, 1944, c. 404.

This penal provision was carried forward and became § 54-142 in the recodification of 1950.

Such was the state of the law when we decided *Bowen Elec. Co.* v. *Foley*, 194 Va. 92, 72 S.E.2d 388 (1952), where we held that a contractor who failed to obtain a Certificate of Registration under the act could not recover on his contract as it was void. Later, in *Cohen* v. *Mayflower Corp.*, 196 Va. 1153, 86 S.E.2d 860 (1955), we pointed out that the contract was void only in the sense that it was illegal and unenforceable by a contractor in an action on the contract against an innocent party. We held there that this illegality did not bar a recovery by the innocent party for the contractor's breach of the contract.

To ameliorate the harshness of the rule followed in *Bowen*, the General Assembly, in 1956, amended and reenacted § 54-142. After amendment, with the pertinent amendment appearing in italics, § 54-142 read:

"Any person not being duly authorized who shall contract for or bid upon the construction of any of the projects or works or any part thereof enumerated in § 54-113, *without having first complied with the provisions hereof,* or who shall attempt to practice general contracting or subcontracting in this State, except as provided for in this chapter, and any person presenting or attempting to file as his own the registration certificate of another or who shall give false or forged evidence of any kind to the Board or to any member thereof in maintaining a certificate of registration or who falsely shall impersonate another or who shall use an expired or revoked certificate, and any awarding authority, who knowingly receives or considers a bid from anyone not properly registered under this chapter, shall be deemed guilty of a misdemeanor

*"Provided that no person shall be entitled to assert this section as a defense to any action at law or suit in equity unless such person shall first affirmatively prove that notice of this section, prior to or upon the execution of the contract, has been given to the party who seeks to recover from such person.*

*"Provided, further that nothing herein contained shall affect any contract entered into prior to July 1, 1956."* Acts, 1956, c. 397.

The statute, in this form, was in effect when the parties reached their oral agreement on February 4, 1970.

As part of an extensive revision of Title 54, the 1970 General Assembly again amended § 54-142. This version of the statute, which became effective on July 1, 1970, reads:

"Any person not being duly authorized who shall contract for or bid upon the construction, removal, repair or other improvements to or upon real property without having first complied with the provisions hereof, or who shall attempt to practice general contracting or subcontracting in this State, except as provided for in this chapter, and any person presenting or attempting to file as his own the registration certificate of another or who shall give false or forged evidence of any kind to the Board or to any member thereof in maintaining a certificate of registration or who falsely shall impersonate another or who shall use an expired or revoked certificate, and any awarding authority, who knowingly receives or considers a bid from anyone not properly registered under this chapter, shall be deemed guilty of a misdemeanor.

"Any person who undertakes any work without a valid registration when such a registration is required by this chapter may, in addition to the authorized penalties for the commission of misdemeanors, be fined an amount not to exceed two hundred dollars per day for each day that such person is in violation.

"Provided that no person shall be entitled to assert this section as a defense to any action at law or suit in equity if the party who seeks to recover from such person gives substantial performance within the terms of the contract in good faith

and without actual knowledge of this section." Acts, 1970, c. 319.

■ It is against this backdrop that we consider the arguments advanced by First Charter on its second assignment of error. First Charter argues that the contract between the parties is void and unenforceable by the contractor, citing *Bowen* and its progeny. This position is unsound for those cases are inapposite, as the contracts involved there were made prior to the 1956 amendment, and such contracts, under the second proviso of the amendment, were not affected. On contracts made after the effective date of the 1956 amendment, Code § 54-142 was not an absolute bar to recovery by a contractor who failed to obtain a Certificate of Registration. Under the amendment, the other party to the contract was required to give the contractor notice of Code § 54-142, before or at the time the contract was made, as a condition to asserting that section as a bar to recovery on the contract by the contractor. *Moore* v. *Breeden*, 209 Va. 111, 161 S.E.2d 729 (1968).

Here, as in the trial court, the defendant contends that Code § 54-142, after the 1970 amendment, applies because the written agreement was not actually signed until October 20, after the 1970 amendment became effective. The plaintiff argues that the statute, as constituted prior to the 1970 amendment, is applicable because the oral agreement was reached and most of the work under the contract was performed by Middle Atlantic before the effective date of the 1970 amendment.

The trial court found it unnecessary to decide this issue since it found the evidence insufficient to impose a bar to the plaintiff's action under either version of the statute. Here, as there, the defendant can point to no evidence which shows that it, before or at the time the contract was made, gave the plaintiff notice of Code § 54-142 thereby enabling it to meet the condition to asserting the bar, and, while the defendant's evidence and the plaintiff's evidence were in sharp conflict concerning the amount of material actually dredged and filled, even the defendant's evidence shows substantial performance in good faith by the plaintiff prior to actual knowledge of Code § 54-142. It follows, of course, that the evidence created no jury question on this issue.

■ The final issue raised by this appeal is the defendant's claim that the court erred in granting and refusing certain

instructions to the jury. As we noted earlier, the trial of this case extended over a period of six days. The evidence was in sharp conflict on practically every fact of importance. The court granted a total of 11 instructions including a finding instruction for each of the parties which fully and fairly presented that party's theory of the case. After a careful review of the instructions granted and refused, we find no error by the trial court in this regard.

For the reasons set forth above, the judgment of the trial court is affirmed.

*Affirmed.*