## CIRCUIT COURT OF FAIRFAX COUNTY

Ahmad Ali Massoud Ansari

    v.

Reza Pahlavi et al.

          Case No. (Law) 97435

Medina Development Co. et al.

    v.

Ahmad Ali Massoud Ansari et al.

          Case No. (Chancery) 115845

          October 24, 1991

By JUDGE MARCUS D. WILLIAMS

This matter involves two cases, *Medina Development Company et al. v. Ahmad Ali Massoud Ansari, et al.*, Chancery No. 115845, and *Ahmad Ali Massoud Ansari v. Reza Pahlavi et al.*, At Law No. 97435. Both cases involve many of the same parties, principals, and instrumentalities at issue.

In the chancery case, the Bill of Complaint contains allegations of various breaches of fiduciary duty, breach of contract, slander of title, fraud, and a prayer for an accounting. It is further alleged that Mr. Ansari, the defendant in the chancery matter, was a fiduciary of the complainant, Reza Pahlavi, the son of the late Shah of Iran. Mr. Ahmad Ali Massoud Ansari is a citizen and resident of the Commonwealth of Virginia, who allegedly served as Mr. Pahlavi's financial consultant. Medina Development Company ("MDC") is alleged to be a corporation

organized and existing under the laws of the State of Georgia, with its principal place of business in Georgia. In the Bill of Complaint, there are allegations that Mr. Pahlavi and MDC were injured by the actions of Mr. Ansari and Mid-Continental Bank and Trust ("MB&T"). No specific amount of damages is prayed for in the chancery case. However, the breadth of the allegations suggests that many millions of dollars are involved in the subject transactions.

In the law action, Mr. Ansari has sued Mr. Pahlavi and MDC for breach of contract, fraud, misappropriation of stock, declaratory judgment as to the ownership of the stock, abusive process, defamation, slander, and tortious interference with prospective economic advantage. Mr. Ansari demands judgment in the amount of ten million dollars in compensatory damages and ten million dollars in punitive damages.

The Court has disposed of several counts in the law case. Count V of the law case, which alleged constructive fraud, was dismissed when Mr. Pahlavi's demurrer was sustained. Also, summary judgment was granted in favor of Mr. Pahlavi for Count VII, which alleged interference with prospective contractual relationship or business expectancy, and partial summary judgment was granted for breach of contract claims in Count I that went beyond the pertinent statute of limitations.

Various discovery matters have been heard by this Court since May of 1990. Several orders and decrees have directed Mr. Ansari and MB&T to comply with this Court's rulings regarding discovery. The instant motion for sanctions involves alleged violations of this Court's orders and decrees by Mr. Ansari and MB&T.[1]

All parties have agreed that the evidentiary hearing should encompass both the law and chancery cases to avoid the necessity of a separate hearing for each case. Therefore, the Court has consolidated the law and chancery cases for purposes of determining the motion for sanctions.

The posture of these cases is such that neither can go forward to trial until the Court can be assured that

---

[1] Except where the context suggests otherwise, this opinion will use "decree" and "order" interchangeably.

there has been compliance with its discovery orders and decrees. An important aspect of these cases involves the disclosure and production of numerous documents that pertain to many complex financial transactions spanning nearly a decade. Mr. Ansari's position, which has been repeatedly asserted in Court, is that many of the documents involving the subject transactions have been destroyed at the direction of Mr. Reza Pahlavi. Mr. Pahlavi, by counsel, has denied giving any such instructions to Mr. Ansari. Mr. Pahlavi argues that n order for him to prove his case against Mr. Ansari and to defend against Mr. Ansari's allegations, all existing documents associated with the subject transactions must be produced.

The complexity of these transactions and their number would make it extremely difficult for a litigant to either prove or defend against claims without the necessary documentation for the trier of fact to understand the transactions involved.

A. *Findings with Regard to Non-compliance of Discovery Orders and Decrees*

I. *Medina Account Records*

One of the more serious allegations of non-compliance with the Court's prior order and decrees involves the discovery of Medina account records in the basement of Mr. Ansari's house. On numerous occasions before this Court, counsel[2] for Mr. Ansari has represented that financial records had been destroyed at the request of Mr. Pahlavi. Not only has counsel for Mr. Ansari made these representations, but Mr. Ansari himself has sworn under oath that the representations are true. For example, the Court notes that in plaintiff's answers to the defendant's first set of interrogatories, submitted July 10, 1990, there is a representation that all records related to investments and re-investments by Mr. Ansari had been destroyed. In his response to Interrogatory Number 4, Mr. Ansari states in pertinent part that "Dr. Kasrai,

---

[2] This is a reference to Mr. Ansari's prior counsel, Mr. Tomar, who was allowed to withdraw.

president of MB&T, was ordered by Mr. Pahlavi to destroy all unnecessary documents." (Answers of Respondent Ahmad Ali Massoud Ansari to First Set of Interrogatories of Complainant Reza Pahlavi at page 2.) With regard to the discovery requests to MB&T, the answers were the same.

Despite Mr. Ansari's representations that these documents had been destroyed, on February 20, 1991, he told a completely different story. First, Mr. Ansari acknowledged that indeed American bank records for Medina did exist. Next, he stated that Mr. Shirzadi, former vice president of Medina, had kept statements, records, and canceled checks from the banks where Medina maintained accounts. (February 20, 1991, Deposition of Ahmad Ali Massoud Ansari at pages 25, 28.)

Mr. Ansari had knowledge of these records, yet had repeatedly asserted before the Court that *no such records existed*. He also has stated that he did not know where any of the records were located. (Supplemental Responses of Respondent Ahmad Ali Massoud Ansari to First Request for Production of Documents of Complainant Reza Pahlavi.) However, he knew that Mr. Shirzadi had been responsible for keeping these records but never inquired of Mr. Shirzadi, the former vice president of Medina, as to whether Mr. Shirzadi had the records. (February 20, 1991, Deposition of Ahmad ALi Massoud Ansari at page 26.) As it turns out, the documents were in Mr. Ansari's basement all along. Mr. Shirzadi testified that he had placed the documents there sometime in 1989. (Transcript of July 16, 1991, at page 116.)

The Court does not find Mr. Ansari's explanations for this turn of events to be credible.

## II. *Accounts at the First National Bank of Atlanta*

Given Mr. Ansari's position that documents covering many of the financial transactions at issue had been destroyed, it was incumbent upon Mr. Ansari to give complete answers to the interrogatories concerning these transactions so that existing documents could be found. Mr. Ansari's failure to reveal the existence of the First National Bank of Atlanta accounts amounts to a serious breach of the discovery orders.

The first set of interrogatories requested the names and addresses of all financial institutions with which MB&T had maintained any financial or correspondent relationship. Mr. Ansari's answer to that interrogatory failed to disclose the existence of Mid-Continental Holding Company, which was a controlled entity of MB&T. Mid-Continental Holding Co. was formed in 1986 to run MB&T's business. (March 6, 1991, Deposition of Bijan Kasrai, Ph. D., at pages 305, 307, 310, 324.) Mid-Continental Holding Co. had two accounts at the First National Bank of Atlanta. Neither of these accounts was revealed in any discovery response. No documentation or other record of these accounts was ever produced. (Responses of Respondent Ahmad Ali Massoud Ansari to First Request for Production of Documents of Complainant Reza Pahlavi number 27 at page 7; Response of Respondent Mid-Continental Bank and Trust (West Indies) Limited to Complainant Reza Pahlavi's First Request for Production of Document number 3 at page 2.)

Mr. Ansari explains his non-compliance to the Court by contending that he was never an officer or employee of MB&T and by denying that he ever operated any part of MB&T (see Post Sanctions Hearing Brief of Ahmad Ali Massoud Ansari and Mid-Continental Bank & Trust Corporation at 3 and 24) and, therefore, was never privy to this information. However, Mr. Ansari responded to the discovery request on behalf of MB&T as chairman of the board of MB&T. As chairman, Mr. Ansari received compensation of $20,000 in 1989. (Answers of Respondent Ahmad Ali Massoud Ansari to First Set of Interrogatories of Complainant Reza Pahlavi, number 14 at page 6.)[3] Furthermore, the discovery answers show that Mr. Ansari held fifty percent of the shares in Mid-Continental Holding Co. during the

---

[3] This further undercuts Mr. Ansari's argument that the Court must consider MB&T and Mr. Ansari's answers separately. Technically, this is correct and the Court has proceeded in this manner. However, the distinction has somewhat been blurred throughout this case because Mr. Ansari has answered for MB&T as its chairman of the board while simultaneously answering for himself personally. Therefore, the Court considers information Mr. Ansari has in his personal capacity to be knowledge he possesses in his corporate capacity.

Similarly, the knowledge which he possesses as a plaintiff in the law case is knowledge which he possesses as a defendant in the chancery case.

relevant time period. (Answers of Respondent Ahmad Ali Massoud Ansari to First Set of Interrogatories of Complainant Reza Pahlavi, number 16 at page 7.) As chairman of the board of MB&T and designated respondent, Mr. Ansari was responsible for fully answering the interrogatory and was in a position to produce documentation of these accounts when first requested. Even if the Court assumes that Mr. Ansari had no personal knowledge of MB&T operations, all he had to do was to ask Dr. Kasrai who had the requested information. Moreover, the Court is not satisfied with Mr. Ansari's explanation that he "forgot" that an account was ever maintained with First National bank of Atlanta. (Post Sanctions Hearing Brief of Ahmad Ali Massoud Ansari and Mid-Continental Bank & Trust Corporation at 11.)

To wait until the eleventh hour and to now assert that nearly all documents have been received by Mr. Pahlavi does not excuse Mr. Ansari's failure to respond in a timely manner. The most recent Court order for production was entered on January 14, 1991, which compelled Mr. Ansari and MB&T to produce "all non-Swiss records . . . by January 25, 1991 . . . ." (January 14, 1991, Order Compelling Discovery.)

First National Bank of Atlanta keeps its records for only seven years. As a result of the delay in revealing these accounts, Mr. Pahlavi is unable to retrieve account records beyond the seven years.

### III. *Union Bank, Switzerland*

In response to paragraph number 27 of the first production request to Ansari and paragraph number 3 of the first production request to MB&T, Mr. Ansari states in part that he does not know whether certain records of MB&T had been destroyed. These documents were also requested by *subpoena duces tecum.* With regard to this production request, MB&T states that they will produce "if available." (Response of Respondent Mid-Continental Bank and Trust (West Indies) Limited to Complainant Reza Pahlavi's First Request for Production of Documents at page 2.)

Mr. Ansari has stated at deposition that these records were not destroyed and that Dr. Kasrai, president of MB&T,

had them. This record is replete with the difficulties in obtaining bank account information from the Union Bank of Switzerland and other foreign banks. Yet Mr. Ansari has misled the court by his responses, and MB&T has failed to produce the documents in a timely manner. If he purports to be answering discovery either for himself or on behalf of MB&T, as he has done throughout this litigation, Mr. Ansari has a duty to make reasonable inquiry before responding and then to respond honestly and completely in a timely manner. In these cases, that was not done.

More inconsistencies by Mr. Ansari can be found in his post sanctions hearing brief of August 1, 1991. In that brief, Mr. Ansari states that "there is not now nor have there ever been bank accounts of any of the defendants at the Union Bank of Switzerland." (Post Sanctions Hearing Brief of Ahmad Ali Massoud Ansari and Mid-Continental Bank and Trust Corporation at 15.) However, this is contradicted by Mr. Ansari's deposition testimony of February 20, 1991. At the deposition, he said that $200,000.00 obtained from National Bank of Washington had been used to pay back an MB&T loan taken through the Union Bank of Switzerland. (February 20, 1991, deposition of Ahmad Ali Massoud Ansari at 31.)[4]

### IV. *Merrill Lynch Account Statements*

Mr. Ansari's financial records were requested under paragraph 56 of the First Request for Production. The request included the production of account statements of Merrill Lynch. Mr. Ansari has produced account statements only for the period from 1981 to September, 1987.

---

[4] The relevant portion reads:

Q. So the $200,000.00 that you paid back out of the funds borrowed from the National Bank of Washington went to pay back a loan arranged by Dr. Kasrai.
A. Yes, through Union Bank of Switzerland.
Q. And in whose name was this loan taken, MB&T?
A. Yes.

Lauren Brueggen, a loan officer at First Fidelity Mortgage Corporation, testified that Mr. Ansari applied for a loan to refinance his home around October of 1990. (July 16, 1991, hearing, transcript page 75.) Mr. Ansari submitted a number of his Merrill Lynch monthly statements to Ms. Brueggen in support of his application for the loan.

Judge Stevens ordered production of these statements by order dated July 9, 1990. A subsequent order dated January 14, 1991, was entered ordering the same documents to be produced. Mr. Ansari has possession of these documents. They were not produced in a timely manner by Mr. Ansari despite orders of this Court to do so.

## V. *Kredietbank Luxemburg Records*

MB&T was ordered to produce documents covering Kredietbank Luxemburg and Grindley's Bank records by order of Judge Stevens (June 29, 1990, Order Denying Motion to Quash Service of Process) in the law case and by production request number 27 of the first production request to Ansari in the chancery case. Also, paragraph number 3 of the first production request to MB&T required production of these documents. The Courts decree of January 14, 1991, ordered certain information be provided if Mr. Ansari claimed documents were "unavailable."

As in other instances, Mr. Ansari has stated that he did not have these documents and that they have been disposed of or destroyed. (*See*, for example, Ansari's deposition at page 23.) The documents were never produced in a timely manner despite the *subpoena duces tecum.* Judge Stevens's order of June 29, 1990, required MB&T to produce all documents by July 11, 1990. The subpoena had been directed to Mr. Ansari as chairman of the board of Directors of MB&T. On July 17, 1991, over a year later, Mr. Ansari testified that records were not destroyed after Mr. Pahlavi brought charges in Switzerland. (Deposition of Ahmad Ali Massoud Ansari at page 28.) Mr. Ansari also testified that Dr. Kasrai, president of MB&T, should have the records. (July 17, 1991, hearing at page 28.) Mr. Ansari's response to counsel's questions on July 17, contradicts his prior response given at his deposition in February of 1991. (Deposition of Ahmad Ali Massoud Ansari at page 23.) Mr. An-

sari's deposition response was incomplete and misleading. Mr. Ansari's deposition response was contradicted further by Dr. Kasrai who stated at his deposition that he was never ordered to destroy records and in fact never destroyed any. (March 6, 1991, Deposition of Bijan Kasrai at pages 140, 193, 204.) With Mr. Ansari's later admissions and Dr. Kasrai's deposition testimony, the Court can only conclude that some records did exist and that this fact was known to Mr. Ansari. Mr. Ansari had reason to know at the time that he responded to the request for production that Dr. Kasrai, an officer of MB&T, had the documents.

### VI. *E. F. Hutton Records*

Production of E. F. Hutton records is requested by paragraph number 27 of the first request for production to Ansari and paragraph number 3 of the first request for production to MB&T. These documents also were requested by *subpoena duces tecum* in the law case.

As before, Mr. Ansari has responded that these documents either do not exist or that he does not know where they are if they do exist. Dr. Kasrai has testified that certain telexes of E. F. Hutton transactions do exist. (March 6, 1991, Deposition of Bijan Kasrai at page 137.) As noted before, this request was covered by a *subpoena duces tecum* to MB&T in care of Mr. Ansari. To date, these documents have not been produced. No credible explanation has been provided to the Court as to why MB&T has not produced these documents. Moreover, Mr. Ansari's responses to discovery in his own behalf and on behalf of MB&T are deceptive and misleading.

The E. F. Hutton documents are material to both the chancery and law cases. In his law claim, Mr. Ansari is suing for commissions which would include monies due him for transactions involving E. F. Hutton. One of the issues in the case will be whether these investments were prudent ones. Moreover, these records are critical in order for there to be a proper accounting.

### VII. *Bank Paribas, New York*

Records of Bank Paribas of New York were requested by paragraph 27 of the first request of production to

Ansari and the first request of production to MB&T. These documents were subject to a *subpoena duces tecum* in the law case. Also, account information was requested by interrogatories number 5 and 6 at the first set of interrogatories to Mr. Ansari and MB&T, respectively.

Although the existence of the Bank Paribas account was revealed in a timely manner, no explanation has been given for the nonproduction of these documents. If the documents were destroyed, then Mr. Ansari had an obligation to tell under what circumstances they were destroyed or where they could be found if they were not destroyed. (January 14, 1991, Order Compelling Discovery at pages 3 and 4.

### VIII. *Mid-Continental Financial Services, Inc.*

Documents for Mid-Continental Financial Services, Inc., were requested by paragraph 27 of the first request for production to Ansari and paragraph number 3 of the first request for production to MB&T.

Mid-Continental Financial Services, Inc., was set up as an agency of MB&T for operations in England. Mid-Continental Financial Services was 80% or 90% owned by MB&T. (March 6, 1991, Deposition of Bijan Kasrai at pages 313 through 314.) Although MB&T has control over Mid-Continental Financial Services, it is not clear that Mid-Continental Financial Services possessed any records relating to Medina or Pahlavi. Therefore, this request cannot be the subject of sanctions until it can be determined whether documents relating to this litigation are in the possession of Mid-Continental Financial Services, Inc.

### B. *Applicable Legal Standards for Awarding Sanctions*

The Court finds that Mr. Ansari and MB&T have failed to comply with various orders and decrees for discovery and that in some instances, these failures were willful. Mr. Pahlavi has argued that the sanction of dismissal in the law case and default judgment in the chancery case are the only appropriate remedies.

In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976), a case similar to this

one, the U. S. Supreme Court held that the sanction of dismissal was appropriate. In that case, the U. S. Supreme Court upheld a District Court's dismissal of a party's action for failure to timely answer written interrogatories as ordered by the District Court. The District Court had relied on Rule 37 of the Federal Rules of Civil Procedure. There are marked similarities between Rule 37 and Rule 4:12 of the Rules of the Supreme Court of Virginia.

Fed. R. Civ. Pro. 37(b)(2)(c) provides in pertinent part that:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following . . . .
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Va. Sup. Ct. R. 4:12(b)(2)(c) provides in pertinent part that:

> (2) Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following . . . .
>
> (C) An order striking out pleadings or parts thereof . . . or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

The parties have not cited any Virginia cases similar to this one. However, other jurisdictions have established standards for determining when extreme sanctions are appropriate. Mr. Ansari references a four-part test on page

21 of the post-sanctions hearing brief of Ahmad Ali Massoud Ansari and Mid-Continental Bank and Trust Corp. This test appears to be taken from *Mutual Federal Savings & Loan v. Richards & Associates*, 872 F.2d 88, 92 (4th Cir. 1989). Under *Mutual Federal*, the four-part test consists of:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of the less drastic sanctions.

*Id.* citing to *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503-04 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020 (1978). Assuming that the four-part test is appropriate, the Court finds that the ultimate sanctions of dismissal and default judgment are appropriate.

Mr. Ansari has misled the Court during the entire discovery process. Additionally, he has willfully failed to comply with orders issued by the Court. The Court finds that this satisfies any bad faith standard or requirement referenced in Mr. Ansari's brief.

Secondly, Mr. Ansari notes that the Court must consider the amount of prejudice resulting from non-compliance. While the Court recognizes Mr. Ansari's compliance in producing numerous documents, the Court also recognizes that other documents essential to reconstructing the complex financial transactions were not timely produced. These documents are like pieces of a puzzle. Without full production, there are only fragments of what transpired and no means by which the whole "picture" can be constructed.

One example of this involves Mr. Ansari's ability to change his story over time. In Mr. Ansari's answer to interrogatory number 21 of the first set of interrogatories of complainant Reza Pahlavi, he states under oath that the Obses shares were held by him as Mr. Pahlavi's nominee. However, at the hearing on July 17, 1991, Mr. Ansari testified that he held the shares for "the system." This directly contradicts his prior discovery response. To the Court's knowledge, Mr. Ansari has never supplemented

his response to the interrogatory to clarify his relationship with the Obses Establishment. Mr. Ansari's belated revelation presents Mr. Pahlavi with another issue that was supposedly settled by virtue of the interrogatory response of over a year ago.

Another example of this is the failure of Mr. Ansari to reveal the documents concerning First National Bank of Atlanta. Mr. Ansari failed to disclose the existence of these accounts. Because these accounts did not come to Mr. Pahlavi's attention until late in the process, a number of related documents have been purged from First National Bank's system. These documents may be forever lost for Mr. Pahlavi. Additionally, Mr. Pahlavi has been prejudiced by the expense and time that counsel has had to spend in Court. Orders and decrees have been entered and ignored by Mr. Ansari. Given the misrepresentations Mr. Ansari has made to the Court in the past, the Court does not believe he will ever comply with this Court's discovery orders. To continue these cases would cause undue expense to all parties involved.

The third part of Mr. Ansari's test calls for a look at the need for deterrence of the particular sort of non-compliance. In this case, the non-compliance has been of an egregious nature. It must be addressed and cannot be allowed by the Court if any form of efficiency is to be maintained throughout the judicial process.

This leads the Court into the fourth prong of Mr. Ansari's argument, that is the potential effectiveness of less drastic sanctions. This Court has given prior warnings and has entered prior discovery orders covering the matters at issue. At this juncture, the Court cannot be assured of full compliance with discovery, and Mr. Pahlavi cannot be assured a fair trial. Fairness of the process in these particular cases rests upon a presumption of good faith on Mr. Ansari's part. Although Mr. Ansari has claimed that many of the documents requested have been destroyed, he nonetheless has refused to fully and completely answer interrogatories and to comply with requests for production which could lead to the discovery of existing documents in the hands of other persons and institutions. Furthermore, late compliance with his responsibilities has caused undue delays in obtaining documents from sources on foreign soil and in locating other discover-

able matters. Viewing the case from that posture, the integrity of the process has been compromised by Mr. Ansari's bad faith.

Mr. Ansari argues that the actions of MB&T are separate from his own actions. However, the discovery in the law case was directed to MB&T in care of Mr. Ansari, Chairman of the Board of Directors. Mr. Ansari was responsible for complying with the request. Mr. Ansari, the plaintiff in the law case, has caused MB&T, a non-party, to violate discovery orders. A plaintiff, by his actions or inactions, cannot be allowed to obstruct discovery directed to a non-party.[5]

### Conclusion

In any document driven case, compliance with discovery is essential. In the instant case, Mr. Ansari has repeatedly failed to respond to discovery requests and to answer *subpoenas duces tecum.* Mr. Ansari's excuses for his failure to comply have changed throughout this litigation. After consideration of the orders and decrees, the evidence and oral argument at the sanctions hearing, the numerous briefs submitted, discovery requests and responses, and representations made in prior proceedings, the Court finds that Mr. Ansari and MB&T have repeatedly violated this Court's discovery orders and decrees. Moreover, the Court finds that Mr. Ansari misled this Court throughout this litigation and has acted with a lack of diligence and good faith. While no single discovery violation standing alone may warrant dismissal and default judgment, taken together these violations indicate a pattern of concealment and haphazard compliance that is unacceptable.

Mr. Ansari's actions have had an irreversible impact on the course of this litigation. Under the applicable case law and the broad discretion given to trial courts in determining what sanctions to impose, this Court finds that the sanctions of dismissal in the law case and judgment

---

[5] Rule 4:12(b)(2) allows a court to sanction a party who fails to obey an order to provide or permit discovery and to enter such orders in regard to such failure as are just. The Court believes this rule is broad enough to encompass Mr. Ansari's actions on behalf of MB&T.

on the pleadings in the chancery case are appropriate. *Wood-bury v. Courtney*, 239 Va. 651, 654 (1990); *First Charter Land Corp. v. Middle Atlantic Dredging, Inc.*, 218 Va. 304 (1977).

Based upon the foregoing, the Court hereby Orders and Decrees that the Law case be dismissed and that default judgments be entered against the defendants, Mr. Ansari and MB&T in the Chancery case.