# CIRCUIT COURT OF FAIRFAX COUNTY

All American
Contractors, Inc., etc.

v.

Mark T. Betonti et al.

February 8, 2000

Case No. (Chancery) 160538

BY JUDGE MICHAEL P. MCWEENY

This matter came before the Court for trial on January 4 and 5, 2000. Numerous exhibits were submitted, and, following closing argument, the Court took the case under advisement.

*Lack of Class A License*

The defendants contend that the plaintiff is barred from any recovery as he entered into the contract without a Class A license. It is undisputed that the plaintiff corporation did not have the license required to perform the work for which it contracted. Section 54.1-1115(A) provides that contracting for construction of improvements to real property without such a license constitutes the commission of a Class 1 misdemeanor. According, the defendants contend the contract in question is illegal and unenforceable. The Court does not agree.

An illegal contract is an agreement with an unlawful object. It is not merely lacking in valid subject matter, but its purpose is positively invalid. *Blacks Law Dictionary*, 4th ed., 882; *American-La France v. Arlington County*, 169 Va. 1, 8, 192 S.E. 758, 761 (1937). A distinction is drawn between contracts which are void on their face, wherein the performance

bargained for is illegal, and those which are merely contrary to a legal provision relating to the making, manner, method or terms of performance. In the former, the law grants no recourse; however, in the latter the relative position of the parties and the value of the performance frequently are subject to judicial redress. See Corbin, *Contracts*, vol. 1, § 1373 *et seq.*

In the case at bar, the General Assembly has made it clear that, while entering into the contract without a license is a Class 1 misdemeanor, the contract itself is not an illegal contract which cannot be enforced. Section 54.1-1115(C) states:

> No person shall be entitled to assert the lack of licensure or certification as required by this chapter as a defense to any action at law or suit in equity if the party who seeks to recover from such person gives substantial performance within the terms of the contract in good faith and without actual knowledge of the licensure or certification requirements of this chapter.

The Supreme Court of Virginia analyzed the amendment to this section's predecessor, § 54-142, in *First Charter v. Middle Atlantic*, 218 Va. 304, 237 S.E.2d 145 (1977). In that case, as in the case at bar, it was argued that the contract was illegal, void, and unenforceable by the unregistered (unlicensed) contractor. The court found that position to be unsound as the Code, while making undertaking the work without a license a misdemeanor, "was not an absolute bar to recovery by a contractor who failed to obtain a Certificate of Registration." *First Charter*, 218 Va. at 312.

Subject to meeting its burden to show substantial performance, good faith, and a lack of actual knowledge of the licensure requirements, the plaintiff is not barred from seeking recovery under this contract.

*Lack of Knowledge; Good Faith*

Mr. Amer testified that, as president and owner of the plaintiff corporation, he was unaware of the licensure requirements. In response, pointing to Mr. Amer's lapsed Class C license for the period 1994 through 1996, the defendants assert that there is a rebuttable presumption created by § 54.1-1115(C) that the plaintiff had actual knowledge of the requirements and thus is barred from relying on the saving provisions of the section. The Court does not agree.

The plaintiff, All American Contractors, Inc., had never been licensed prior to the time of contract, and therefore, the plaintiff never failed to renew

its license. A presumption created for these purposes must be strictly construed, and Mr. Amer's prior license may not be used to create a presumption against a different party.

This does not mean that Mr. Amer's prior license has no relevance to the issue of the knowledge of the corporation through its officers; it simply means no presumption is created. Mr. Amer testified that he obtained the Class C license in order to "pull permits" on the jobs he was performing during that period. He explained his understanding that a general contractor had the responsibility for permits and that, as he and his corporation would only be subcontractors, the corporation did not need to have a Class A license for this contract. Further, he described successfully sitting for the Class A license examination in 1997 because he hoped to be a general contractor in the future; but, he still did not apply for the license as he did not believe he needed one for the work his corporation was performing at that time. His first knowledge came when he consulted a lawyer about this case.

The only evidence to the contrary is the inference which the defendants request the court to draw from the decision to hire an independent company to inspect the work, rather than call in Fairfax County inspectors. This is insufficient in light of Mr. Amer's plausible explanation of his understanding of the legal obligations.

It is clear that "a corporation's 'knowledge' can only be that of those individuals whose personal knowledge may be legally imputed to it." *J. W. Woolard Mechanical v. Jones Development*, 235 Va. 333, 336, 367 S.E.2d 501 (1988). Here, as in *Woolard*, the principals were unaware of the statutory scheme. The Court finds the plaintiff to have established lack of actual knowledge of the licensure requirements. As it is the intent "to penalize those whose violations of the statutory scheme are knowing, but to excuse those who perform in good faith" (*Id.*, 339), the issues which remain are whether the plaintiff substantially performed the contract and whether the defendants sustained damages in excess of any performance by the plaintiff.

*Substantial Performance*

Substantial performance is a question of fact. The Court must determine whether the contract has been faithfully performed in its material and substantive particulars without willful departure from its essential terms.

The Contract in question (Plaintiff's Exhibit No. 4) provides for concrete and brick work "as shown on the plans." There are four alleged change orders, as well. The plans (Plaintiff's Exhibit Nos. 1A and 1B) provide locations and landscaping designs, but do not include elevations, thickness, widths, depths,

or the like. No digging or base preparation is required by the terms of any of the documents.

The plaintiff contends that it performed all of the work required by the contract and performed according to code requirements. The defendants contend that the work was substandard and performed in such a manner as to deprive them of the benefit of their landscape and asphalt improvements. It is undisputed that the plaintiff installed the walkways, the brick pillars (including the two extra ones), the brick retaining walls, and the planters. The work in dispute includes the cost of delays, the height of the concrete walkways, damage to the landscaping, defective electrical conduits, and trash removal.

Initially, the defendants contended that the pouring of the concrete walkways was performed in violation of the contract in that they were four inches in height, this placing them one and one-half inches higher than the interconnecting asphalt driveway. The defense expert, John Coalson of East Coast Development Corporation (ECD), confirmed the difference in height but admitted that four inches of concrete was industry standard. The defendants then contended that the plaintiff had been obligated to excavate to assure this height differential would not have occurred. Mr. Coalson admitted that his company was responsible for the grades but said that the plaintiff should have modified them under these conditions.

The Court finds that the contract did not require the plaintiff to do any excavation and that, as Mr. Coalson testified, ECD was responsible for preparing the grades for the concrete pour. In addition, the plans do not specify any elevations for the walkways and the concrete was to be poured prior to the asphalt work on the driveways. The plaintiff substantially performed by relying upon the prepared grades and industry standards for depth of the concrete.

Whether there is compensable damage to the landscaping resulting from poor drainage caused by the height of the walkways is controlled by the same reasoning. (Other landscape damage would not go to the issue of substantial performance and will be addressed below.)

The defective electrical conduits installed in the brick pillars also fail to demonstrate lack of substantial performance. The conduits were furnished by the defendants and extended by the plaintiff with like materials. In addition, neither the installation of the conduits nor any electrical work were a part of the contract.

Lastly, the defendants have demonstrated substantial expenses resulting from delays in the performance of the contract. It appears undisputed that oral representations were made by the plaintiff regarding time to completion and

that these projections were not met. The evidence is clear, however, that the plaintiff's time of performance was controlled by the defendants' scheduling of other contractors on the job.

The Court finds the plaintiff has substantially performed the contract and may enforce its terms.

## Damages

The Court finds that the contract called for payment of $50,000.00 and, by oral agreement followed by written change orders, additional work totaling $6,950.00. The remaining "back charges" and change orders have not been proven by the plaintiff. The total contract price is $56,950.00.

All parties agree that the plaintiff has received $33,000.00 and that it rejected a check in the sum of $4,437.50 offered in "final" payment. The defendants contend that an additional $9,000.00 in cash was paid to the plaintiff; however, no receipt was produced. The Court finds that the cash payment would be contrary to the other dealings between the parties and that in light of the conflict in the testimony the credible evidence is insufficient to prove such a transfer.

The defendants have counter-sued alleging damages and "back-charges" in the performance of the contract. The Court finds that most of the "damages" claimed were the result of inadequate plans and poor coordination of the various contractors. There were, however, damages from failure to remove trash and ruts in the landscaping caused by the equipment of the plaintiff. The Court finds damages in the amount of $387.50 for trash removal and in the amount of $720.00 for regrading, for a total of $1,107.50.

## Mechanics Lien

Although two mechanics liens have been claimed, only the lien reflected in Plaintiff's Exhibit No. 11 remains for consideration. The defendants assert that Count I, the bill to enforce this lien, must be dismissed for failure to establish ownership of the property. The Court finds that the admissions in the Answer combined with the testimony and exhibits are sufficient to prove that the defendants are the owners and to establish other parties in interest. In addition, the Court finds the Memorandum of Lien to be in proper form, to relate to labor and materials for the improvement of building and structures permanently annexed to the property, to have been timely furnished, and that the Bill to Enforce the lien was timely instituted. The Court determines the

lien to be valid subject to limitations set forth in the claimed amount, plus interest as requested.

## Conclusion

The Court finds that on Count III the plaintiff shall be granted judgment against the defendants in the sum of $22,842.50 plus interest from August 28, 1998, and its court costs. As a cumulative remedy, the Court grants judgment on Count I, as set forth above. The Court already has struck the evidence as to Count II and now dismisses the claim under Count IV. The defendants' counterclaim, both Counts I and II, is dismissed.