CLEMENTS, J.,
concurring, in part, and dissenting, in part.
I concur with the principal opinion except as to the issues involving the appointment and payment of the conservator. For the reasons that follow, I would hold that the trial court erred in appointing the conservator and ordering husband to pay any of the conservator’s fees. Hence, I respectfully dissent from the majority’s affirmance of the trial court’s appointment of the conservator and the majority’s decision that husband’s estate is responsible for payment of that portion of the conservator’s fee that accrued prior to husband’s death.
In upholding the trial court’s appointment of the conservator in this case, the majority concludes the trial court acted properly under Code § 20-103(A)(vii) to prevent husband’s dissipation of marital assets.[7] I disagree with the majority’s decision for a number of reasons.
*77 First, I believe the majority’s reliance on Code § 20-103(A)(vii) to resolve this matter is unsupported by the record in this case and contrary to established principles of appellate review.
On October 15, 2001, wife filed a “Motion and Notice” informing husband that wife would appear in court on November 15,2001, solely
to move the Court for the following relief:
1. To request that the Court provide any and all relief contained under Rule 4:12 for' Mr. Hackler’s continued failure to abide by this Court’s previous Order regarding discovery.
2. To hold Mr. Hackler in contempt of Court for his continued failure to abide by this Court’s support Orders, including health insurance matters.
3. To request attorney’s fees and costs in the amount of $1500.00 for this unnecessary appearance.
After the November 15, 2001 hearing, the trial court entered an order on January 16, 2002, stating as follows:
On November 15, 2001, the plaintiff [wife] appeared in person and by counsel. The defendant did not appear, but his counsel was present on his behalf.
After hearing the evidence and argument on the numerous issues before the Court, the Court rules, as follows:
1. A show cause is to be issued against the defendant.
2. Within twenty-one (21) days of November 15, 2001, the defendant is to answer all interrogatories and supplemental interrogatories under oath, and he is to fully and completely answer Interrogatory No. 5 under oath within twenty-one (21) days.
*78 3. Any and all relief requested under Rule 4:12 of the Rules of the Supreme court of Virginia will be continued to the show cause hearing date, as will the issue of attorney’s fees and costs requested by the plaintiff.
That same day, the trial court also entered a show cause order stating as follows:
On November 15, 2001, the plaintiff [wife] appeared in person and by counsel. The defendant was not present, but his counsel was present on his behalf.
After hearing a brief amount of evidence regarding what appears to be a continued violation of this Court’s previous Court Orders, it is herein ORDERED that the defendant [husband] is to personally appear in the Circuit Court of Chesterfield County on the 28th day of January, 2002, at 9:00 o’clock a.m. to show cause, if any, why he should not be fined, imprisoned, and why he should not pay attorney’s fees to counsel for the plaintiff for what appears to be the defendant’s continued violations of this Court’s previous Orders regarding spousal support, health bills of the plaintiff not covered by insurance, dissipation of marital assets, and the defendant’s continued failure to answer the discovery previously propounded by the plaintiff in this case, which discovery the defendant has been ORDERED previously by this Court to answer. Additionally, the defendant shall show cause, if any, why this Court should not entertain any and all appropriate motions under Rule 4:12 of the Rules of the Supreme Court of Virginia, including, but not limited to, appointing a conservator or guardian to manage the marital assets in control of the defendant until a Final Decree can be entered in this case.
The Clerk is directed to prepare the necessary papers for a private process server to serve a copy of this show Cause Order on the defendant at his address....
(Emphasis added.) It is clear from this order that, for purposes of the show cause notice given to husband, the appointment of a conservator was tied strictly to Rule 4:12, in accordance with wife’s motion for relief under that Rule.
*79 Following the January 28, 2002 show cause hearing, the trial court entered an “Order” on March 5, 2002, stating as follows:
On January 28, 2002, Janice Hackler appeared in person and by counsel. Lewis R. Hackler, although personally served, did not appear. Richmond A. Wollstein, Esq., appeared as attorney for Mr. Hackler. The purpose of the hearing was the “Show Cause Order” filed against Mr. Hackler.
After hearing the evidence and argument of counsel, it herein ORDERED, as follows:
1. Mr. Hackler is in contempt of this Court’s previous Orders. The disposition of this contempt is deferred until March 27, 2002, at 10:15 a.m. ...
2. This Court finds that Mr. Hackler is in arrears in the amount of $2,000.00 through January, 2002, regarding his spousal support obligation. This amount is to be paid directly to Mrs. Hackler no later than February, 2002. Mr. Hackler is under a continuing spousal support obligation of $2,000.00 per month. Judgment is rendered in favor of Janice W. Hackler against Lewis R. Hackler in the amount of $2,000.00, plus interest at nine percent, from January 28, 2002.
3. The Court finds that Mr. Hackler is in arrears $169.60 regarding his obligation to Mrs. Hackler concerning uncovered medical and drug expenses. He is to pay this amount directly to her no later than the end of February, 2002. Judgment is rendered on behalf of Janice W. Hackler against Lewis R. Hackler in the amount of $169.60, plus interest at nine percent, from January 28, 2002.
4. Mr. Hackler is ORDERED to pay to Denis C. Englisby, Esq., ... $750.00 in attorney’s fees regarding the work that had to be performed and the appearance made on January 28, 2002. This amount is to be paid no later than the end of February, 2002. This amount carries a nine percent interest rate per year from January 28, 2002, until paid in full. Additional attorney’s fees may be awarded on the March 27, 2002 Court date.
*80 5. This Court appoints Richard C. Ferris, II, Esq., as Conservator of the funds and accounts being held by Mr. Hackler at this time. A separate Order will be entered outlining Mr. Ferris’ duties.
(Emphasis added.)
That same date, the trial court also entered an “Order Appointing Conservator,” which outlines the conservator’s duties and explains the appointment as follows:
In accord with this Court’s ruling resulting from the hearing of January 28, 2002, it is herein ORDERED that Richard C. Ferris, II, Esq., is hereby appointed to act as Conservator for all funds, accounts, royalties presently in the control of Mr. Hackler or in the hands of others on his behalf, including, but not limited to, any expectancies of funds that come to him or may come to him each month or periodically.
(Emphasis added.)
Although, neither of the trial court’s orders of March 5, 2002, expressly state that the conservator was appointed pursuant to Rule 4:12,[8] both orders indicate that they arose from the January 28,2002 hearing, the sole express purpose of which was to deal with the issues addressed in the court’s January 16, 2002 “ ‘Show Cause Order’ filed against [husband].” As previously noted, in identifying the sanctions and remedial measures the court may impose in accordance with wife’s motion for relief, the show cause order specifically refers to the appointment of a conservator pursuant to Rule 4:12. Conversely, neither the show cause order nor the court’s March 5, 2002 orders makes any reference to Code § 20-103. Nor did wife ever move the trial court for relief under that statute.
Likewise, the trial court’s “Order” of March 5, 2002, draws no connection between the appointment of the conservator and the court’s apparent finding that husband was in contempt of *81 court for the dissipation of marital assets. In the show cause order, the court specifically ordered husband to show cause “why he should not be fined, imprisoned, and [ordered to] pay [wife’s] attorney’s fees ... for what appears to be the defendant’s continued violations of this Court’s previous Orders regarding ... dissipation of marital assets” and separately ordered husband to show cause why the court should not appoint a conservator pursuant to wife’s request for relief under Rule 4:12, a rule regarding discovery. In the March 5, 2002 “Order,” the trial court made a general finding that husband was in contempt of court, but expressly deferred the disposition of that finding until a later date. In other words, the trial court’s appointment of the conservator was not the disposition of the contempt finding for husband’s dissipation of marital assets in violation of the court’s previous orders. Rather, it was, in my view, a separate remedial measure imposed by the trial court pursuant to Rule 4:12.
Thus, I believe that, regardless of its apparent effect, the trial court’s appointment of the conservator was made pursuant to Rule 4:12. This view is buttressed by the fact that, regarding the appointment of the conservator, husband’s estate contends on appeal, as below, solely that the trial court did not have the authority to appoint a conservator pursuant to Rule 4:12 and that, even if the court had such authority, the appointment of the conservator was not in compliance with the procedural requirements set forth in Code §§ 37.1-134.6 to 37.1-134.22 pertaining to the appointment of a conservator. In response, wife contends exclusively that the trial court had the authority to appoint a conservator, and properly did so, under Rule 4:12. Neither party suggests that the trial court based its appointment of the conservator upon any rule or statute other than Rule 4:12 or that any other rule or statute authorized the trial court to do so. Hence, the sole issue presented on appeal regarding the appointment of the conservator is whether the trial court erred in appointing the conservator pursuant to Rule 4:12.
This Court has consistently held that we will not address an issue on appeal that was not raised before the trial court, see, *82 e.g., Torian v. Torian, 38 Va.App. 167, 185-86, 562 S.E.2d 355, 365 (2002) (citing Rule 5A:18), and on appeal, see Mullins v. Commonwealth, 39 Va.App. 728, 733, 576 S.E.2d 770, 772 (2003) (“On appeal, we [will] consider only the issues raised.”); Shoup v. Shoup, 37 Va.App. 240, 253 n. 6, 556 S.E.2d 783, 790 n. 6 (2001) (en banc); see also Richardson v. Moore, 217 Va. 422, 423 n. 1, 229 S.E.2d 864, 865 n. 1 (1976) (stating the Court would “express no opinion” on a particular question because that question “was not raised on appeal”). A significant purpose underlying these principles is to provide the parties the opportunity to consider and address the issues related to perceived errors before we resolve them on appeal. See, e.g., Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988) (requiring issues be raised prior to their resolution on appeal “to protect ... from appeals based upon undisclosed grounds”). Here, the parties never had the opportunity, either below or on appeal, to consider and address the propriety of the application of Code § 20-103 in this case. Thus, I am of the opinion that, in proceeding, in its resolution of this matter, sua sponte beyond the scope of the specific issue presented to the trial court and to this Court on appeal, without the parties ever having had the opportunity to address the specific issue resolved by the majority, the majority exceeds our appellate authority.
Moreover, in determining that the trial court acted properly under Code § 20-103(A)(vii) to prevent husband’s dissipation of marital assets, the majority effectively engages in a “right result, wrong reason” analysis. See Driscoll v. Commonwealth, 14 Va.App. 449, 452, 417 S.E.2d 312, 313 (1992) (“An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.”). However, in doing so, the majority disregards the well established principles that the “right result, wrong reason” rule “may not be used if the correct reason for affirming the trial court was not raised in any manner at trial” or if “further factual resolution is needed before the right reason may be assigned to support the trial court’s decision.” Id. Here, as previously stated, the majority’s “right reason” for affirming the trial *83 court’s decision — Code § 20-108(A)(vii) — was never presented to the trial court in any manner. Likewise, further factual resolution is statutorily required before it may be properly concluded that the trial court correctly appointed a “conservator,” see Code §§ 37.1-134.6 to 37.1-134.22, or, perhaps more accurately here, a “receiver,” see Code §§ 8.01-582 to 8.01-606, under Code § 20-103(A)(vii). For example, pursuant to Code § 37.1-134.13, a trial court or jury must consider several specific factors and “determinen on the basis of clear and convincing evidence that the respondent is incapacitated and in need of a guardian or conservator” before a conservator may be appointed. Similarly, Code § 8.01-592 permits the appointment of a special receiver without notice to the defendant only if it is first determined that “an emergency exists and it is necessary that a receiver be appointed immediately to preserve the subject matter.”[9] In such a case, a bond is required, see Code § 8.01-592, and the appointment “is limited to a period not longer than thirty days” unless the appointment is extended following a de novo hearing on the matter, Code § 8.01-593. I find nothing in the record that indicates that such requisite determinations, as appropriate, were ever made. I conclude, therefore, that the majority’s use of a “right result, wrong reason” analysis to resolve this matter is inappropriate.
*84 Furthermore, even assuming, arguendo, (1) that the issue of Code § 20-103(A)(vii)’s application is properly before us in this case, (2) that Code § 20-103(A)(vii) grants the trial court the discretion to appoint a special receiver to preserve a spouse’s estate, (3) that the trial court intended to appoint a special receiver in this case pursuant to Code § 20-103(A)(vii) to prevent husband’s dissipation of marital assets during the pendency of the divorce action, and (4) that the appointment of the special receiver was properly procured in accordance with the notice and other requirements of Code §§ 8.01-591 to 8.01-599, I would still conclude that the trial court abused its discretion because, in my view, Code § 20-103(A)(vii) does not authorize the appointment of a receiver upon the facts and circumstances of this case.
“The appointment of a special receiver is ... an extraordinary effort by the court to preserve the assets at issue until trial or execution can be had.” John L. Costello, Virginia Remedies § 9.2, at 258 (2d ed. 1999). Additionally, it is “an intrusive remedy which should be resorted to only in extreme cases.” Id. § 9.5(c), at 262; see also Mintzer v. Arthur L. Wright & Co., 263 F.2d 823, 824 (3d Cir.1959) (observing that the “appointment of a receiver is an equitable remedy of rather drastic nature”). Indeed, the appointment of a receiver “is an exercise of the extraordinary power of the court, based upon equitable considerations. It is often harsh and oppressive in its effects, wresting the property from the owner without a hearing and before a decree, and inflicting irreparable mischief.” Williamson’s Adm’r v. Washington City, Virginia Midland & Great S. R.R. Co., 74 Va. (33 Gratt.) 624, 635 (1881). Hence, because it is “a very intrusive remedy,” a receivership should be used only where “necessary to prevent irreparable harm and no other adequate remedy exists.” Brett R. Turner, Equitable Distribution of Property 3.05, at 63 (2d ed. 1994) (citing Mayhue v. Mayhue, 336 Pa.Super. 188, 485 A.2d 494, 497 (1984) (noting that a receivership is “a harsh measure” that should only “be exercised as a remedy of last resort”)).
*85 Here, the trial court ordered the appointed fiduciary to “take receipt” of “all funds, accounts, royalties presently in control of [husband] or in the hands of others on his behalf, including, but not limited to, any expectancies of funds that come to him or may come to him each month or periodically” and to “distribute no more than $4,000.00 per month to [husband] from these funds.” The trial court, however, made no finding that the appointment of a receiver was necessary to prevent irreparable harm to wife’s likely share of the marital estate, and I am unable to reach that conclusion upon the record before me. Indeed, although the record contains no precise determination of the extent of husband’s dissipation of marital funds prior to the appointment of the fiduciary on March 5, 2002, it appears that husband’s failure to comply with the trial court’s December 9, 1999 order enjoining the parties from “transferring, selling, disposing, concealing or otherwise making unavailable the marital property and other property acquired during the marriage of the parties, until further Order of the Court,” resulted in a loss of funds of, at most, approximately $13,000, from an account that held more than $140,000 following that dissipation. No other evidence of dissipation appears in the record.
Therefore, I am of the opinion that other, less drastic adequate remedies were available to prevent further dissipation of marital assets by husband and to compensate the marital estate for those assets already dissipated. Indeed, the trial court had not exhausted the compensatory and coercive civil contempt sanctions at its disposal. Among other possible remedies, the trial court might have ordered reimbursement of the dissipated funds to the marital estate to restore the status quo or, upon distribution of the marital assets, simply compensated wife for her losses resulting from husband’s noncompliance by accounting for the dissipation of marital assets in the property distribution award and further awarding wife any costs she incurred for experts needed to trace and calculate the dissipated assets. To protect against and prevent further dissipation of the marital estate, the trial court also might have ordered that a bond be given to cover *86 wife’s likely share of the marital estate, transferred control of some or all of the marital assets to wife, or ordered prospective fines and incarceration that would be imposed in the event husband continued to dissipate marital assets.
Thus, because there was no showing that the appointment of a receiver was necessary to prevent irreparable harm to wife and other adequate remedies existed, I would hold that the appointment of a receiver was unwarranted in this case and, thus, improper. Consequently, I disagree with the majority’s conclusion that, in appointing the conservator, the trial court acted properly under Code § 20-103(A)(vii) to prevent husband’s dissipation of marital assets.
Turning to the actual issue presented on appeal, I would also hold that Rule 4:12 does not authorize the appointment of a conservator as a sanction for a party’s failure to comply with a court’s order compelling discovery.
Rule 4:12(b) governs discovery abuses and provides for sanctions against a party who fails to comply with a court’s order to provide or permit discovery. A trial court generally exercises “broad discretion” in determining the appropriate sanction for failure to comply with an order relating to discovery. Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990). Consequently, we accord deference to the decision of the trial court in this case and will reverse that decision only if the court abused its discretion— See First Charter Land Corp. v. Middle Atl. Dredging, Inc., 218 Va. 304, 308-09, 237 S.E.2d 145, 148 (1977). However, an appellate court should not simply rubber stamp every discretionary decision of a trial court. To the contrary, we have an obligation to review the record and, upon doing so, to reverse the judgment of the trial court if we find a clear abuse of discretion.
Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000). Rule 4:12(b)(2) provides, in pertinent part, that, “[i]f a party ... fails to obey an order to provide ... discovery, ... the court ... may make such orders in regard to the failure as are just.” (Emphasis added.) Thus, although Rule 4:12(b)(2) *87 grants the trial court broad discretion, it does not give the trial court unfettered discretion to impose any remedy or sanction for a party’s failure to comply with the court’s order compelling discovery. See id. at 176, 530 S.E.2d at 907 (holding that the trial court abused its discretion under Rule 4:12(b)(2) because the sanction it imposed was unjust).
Here, apparently based on husband’s failure to comply with its orders compelling discovery, the trial court appointed a conservator under Rule 4:12 to “take receipt of’ and manage the marital assets in husband’s control. I perceive no logical connection in this case, or any other of which I can conceive, between the appointment of a conservator to “take receipt of’ and manage the marital assets and a party’s failure to comply with a court’s order compelling discovery. The one thing has nothing to do with the other. I conclude, therefore, that, because the appointment of a conservator is not “in regard to” a party’s failure to obey an order to provide discovery, the appointment of a conservator pursuant to Rule 4:12 is necessarily unjust and, thus, “involves the exercise of unfettered discretion.” Gloucester County Dep’t of Soc. Servs. v. Kennedy, 256 Va. 400, 405, 507 S.E.2d 81, 83 (1998) (Koontz, J., dissenting). I am unaware of any legal authority that persuades me otherwise.
Moreover, even assuming, arguendo, that Rule 4:12 authorizes the appointment of a conservator, I would still hold that the trial court abused its discretion in appointing the conservator in this case because other, less drastic adequate remedies and sanctions were available to the trial court under Rule 4:12 to enforce the court’s discovery orders and to remedy husband’s failure to respond timely to discovery. Hence, I respectfully dissent from that portion of the principal opinion that holds the appointment of the conservator was proper under Rule 4:12.
Having concluded that the trial court’s appointment of the conservator constituted error, I further conclude that requiring husband to be responsible for any of the conservator’s fees is unwarranted. Accordingly, I would hold that the trial court *88 abused its discretion in ordering husband to pay any of the conservator’s fees.
For these reasons, I would reverse the trial court’s appointment of the conservator and its award of the conservator’s fees against husband.

. Code § 20-103(A)(vii) provides, in pertinent part: *77 In suits for divorce ... the court having jurisdiction of the matter may, at any time pending a suit pursuant to this chapter, in the discretion of such court, make any order that may be proper ... to preserve the estate of either spouse, so that it be forthcoming to meet any decree which may be made in the suit____

. Indeed, neither order expressly provides any statutory or rule-related basis for the appointment of the conservator.

. Assuming, without deciding, that, based on the record’s lack of any evidence suggesting husband was incapacitated, the appointment of the "conservator” in this case was actually an appointment of a "receiver,” I conclude that such appointment was necessarily made pursuant to Code § 8.01-592, because (1) the attorney appointed was clearly a "special receiver,” rather than a "general receiver of the court,” see Code §§ 8.01-582 to 8.01-590 (describing the duties and responsibilities of general receivers); John L. Costello, Virginia Remedies § 9-2, at 258 (2d ed. 1999) ("Whereas the general receiver is the permanent fiscal agent of the court, the special receiver is appointed ad hoc and (usually) for the short period before trial.”), and (2) the only notice given to husband regarding the appointment of a fiduciary in this case referred solely to the appointment of a "conservator or guardian” pursuant to "Rule 4:12,” which does not, in my opinion, qualify as "reasonable notice” of an application for "the appointment of a receiver” under Code § 8.01-591 or a "pray[er] for the appointment of a receiver” under Code § 8.01-594.